**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**James BRADACH, Defendant–Appellant, Cross–Appellee.**

**Nos. 91–1207, 91–1131.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1991.

Decided Dec. 3, 1991.

**1462**

Andrew B. Baker, Jr., Asst. U.S. Atty., argued, Dyer, Ind., for plaintiff-appellee, cross-appellant.

Michael D. Monico, Barry A. Spevack, argued, Monico, Pavich & Spevack, Chicago, Ill., for defendant-appellant, cross-appellee.

Before CUMMINGS and RIPPLE, Circuit Judges, and REYNOLDS, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

A jury found James Bradach guilty of subornation of perjury (18 U.S.C. § 1622), conspiracy to commit subornation of perjury (18 U.S.C. § 371), and making false declarations under oath (18 U.S.C. § 1623). In all, Bradach was convicted on eleven counts pertaining to false declarations. Judge Lozano sentenced Bradach to a thirty-month term of imprisonment and imposed a $50,000 fine pursuant to the United States Sentencing Guidelines ("guidelines").[1]

Both the United States and the defendant appeal the sentence imposed by the district court. Bradach contests the dis-

trict court's decision to increase his offense level 3 points for substantial interference with the administration of justice under § 2J1.3(b)(2) of the guidelines. He also contends that the district court erred when it imposed a $50,000 fine under the guidelines. The government objects to the district court's grouping of offenses under § 3D1.2 of the federal sentencing guidelines and advocates a sentencing range of thirty-three to forty-one months and a $550 assessment.

## I. FACTS

Defendant James Bradach, owner of the Gary Insurance Agency, devised a scheme whereby he would periodically issue checks to Everett Hetrick, James Phillips, and Paul Gjebre.[2] The four agreed that if they were questioned by law enforcement officers or at legal proceedings they would provide a false explanation for the payments. Specifically, they would explain the payments as compensation for business and professional services and for assistance with a health care credit card venture. The three payment recipients reported the payments as "income" on their tax returns, even though they had never worked for defendant.

In 1987, Hetrick, Phillips and Gjebre testified before a federal grand jury that was investigating payments being made to Lake County Commissioners. At the grand jury proceeding each of the three men supplied the previously agreed upon lie regarding the purpose of the payments. Phillips and Hetrick were each indicted and tried at separate trials for their false declarations

---

[*] The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

1. At Bradach's sentencing, the district judge grouped the counts against Bradach under § 3D1.2(b) of the guidelines for a base offense level of 12. The court increased the offense level by 3 levels for substantial interference with the administration of justice, guidelines § 2J1.3(b)(2), and by an additional 2 levels for organizing the criminal offense, guidelines § 3B1.1(c). The offense level of 17, combined with Bradach's lack of previous criminal history, delineated a sentencing range of 24–30

months imprisonment and a fine range of $5,000–$50,000. The district judge imposed both the maximum term of imprisonment and the maximum fine prescribed by the guidelines. The judge also required defendant to pay a special assessment of $600 and be placed on supervised release for three years after his release from imprisonment.

2. Neither of the parties' briefs explains the true nature of the payments. However, the government does assert that Hetrick, one of the payment recipients, was a "bookmaker."

before the special grand jury.[3] At each trial, Bradach gave the false explanation of the payments while he was under oath. Phillips was acquitted of one count and convicted on another. Hetrick was acquitted. Phillips was subsequently retried, and once again Bradach testified falsely. Phillips was again convicted on the remaining count.

## II. ANALYSIS

On appeal, this Court assumes jurisdiction pursuant to 18 U.S.C. § 3742. We review Bradach's sentence to determine whether it "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; (3) is outside of the applicable guideline range and is unreasonable * * *; or (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(e); *United States v. Guerrero*, 894 F.2d 261, 264–265 (7th Cir.1990). In conducting our review, this Court "shall accept the findings of fact of the district court unless they are clearly erroneous." *Id.*

### A. *Substantial Interference with the Administration of Justice*

■ Bradach contends that the lower court erred when it increased his offense level 3 levels for substantial interference with the administration of justice. Section 2J1.3(b)(2) of the federal sentencing guidelines provides for a 3-level sentence increase if "perjury or subornation of perjury resulted in substantial interference with the administration of justice." Application Note 1 to guidelines § 2J1.3(b)(2) states that substantial interference with the administration of justice includes "a premature or improper termination of a felony investigation, an indictment or verdict based upon perjury, false testimony, or other false evidence, or the unnecessary expenditure of substantial government or court resources." The district court's decision to increase defendant's offense level for substantial interference with the administration of justice stems from the judge's

conclusion that Bradach's perjurious statements led to unnecessary expenditure of government resources.

Bradach challenges the court's decision. According to him, the government never believed his or his co-conspirators' false testimony and therefore never expended additional resources because of those lies. For support Bradach cites *United States v. Jones*, 900 F.2d 512 (2d Cir.1990), certiorari denied, —— U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 99. In *Jones* the Second Circuit reversed the trial court's finding of substantial interference with the administration of justice where another person had already provided the government with the information that Jones had concealed. However, *Jones* acknowledged that "[t]he government need not particularize a specific number of hours expended by government employees." *Id.* at 522. Instead, the court stated that "[i]n some cases, when the defendant has concealed evidence and is the only known source of information, substantial interference with the administration of justice may be inferred." *Id.* (citing *United States v. Barnhart*, 889 F.2d 1374, 1379–1380 (5th Cir.1989), certiorari denied, 494 U.S. 1008, 110 S.Ct. 1307, 108 L.Ed.2d 483). In this case, Bradach suborned perjury from all persons who knew the true nature of the payments— Hetrick, Phillips and Gjebre. Bradach's conduct not only impaired grand jury proceedings but also necessitated four perjury-related trials within three years. This evidence supported the district court's finding that Bradach's actions led to unnecessary expenditure of government resources and substantially interfered with the administration of justice. See *United States. v. Lueddeke*, 908 F.2d 230 (7th Cir.1990); *United States v. Barnhart*, 889 F.2d 1374 (5th Cir.1989).

### B. *$50,000 Fine*

Defendant also contests the $50,000 fine imposed by the district court. The guidelines range for a fine pursuant to an offense level of 17 is from $5,000 to $50,000. Guidelines § 5E1.2(c)(3). In accordance

---

**3.** Gjebre entered into a plea agreement with the government.

with the guidelines, the district court must weigh the following factors when determining the exact fine to be imposed:

(1) the defendant's income, earning capacity, and financial resources;

(2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishment would impose;

(3) any pecuniary loss inflicted on others as a result of the offense;

(4) whether restitution is ordered or made and the amount of such restitution;

(5) the need to deprive defendant of illegally obtained gains from the offense;

(6) whether the defendant can pass on to consumers or other persons the expense of the fine; and

(7) if the defendant is an organization, the size of the organization and any measure taken by the organization to discipline any officer, director, employee, or agent of the organization responsible for the offense, and to prevent a reoccurrence of such an offense.

18 U.S.C. § 3572(a).

■ Defendant contends that the district court did not weigh these factors to determine his ability to pay a $50,000 fine. He is correct that the trial judge must consider the factors enumerated in the guidelines before imposing a fine. *United States v. Masters*, 924 F.2d 1362, 1369 (7th Cir.1991), certiorari denied, —— U.S. ——, 111 S.Ct. 2019, 114 L.Ed.2d 105. However, it is clear from the pre-sentence report that the trial judge did weigh all factors relevant to this case.

■ Although the statutory factors were considered with respect to defendant's ability to pay a $40,000 fine rather than a $50,000 fine, the defendant did not argue that his ability to pay $50,000 was substan-

tially less than his ability to pay $40,000.[4] Perhaps if defendant had objected to the increased fine at trial, he could have demonstrated that a 25% increase in his fine was unfair, and that he did not have the ability to pay that additional portion of the fine. However, he failed to raise such an objection to the trial judge after sentencing, even though he had an opportunity to do so. Our examination of the thorough analysis of Bradach's financial situation contained in his pre-sentence report shows that the trial judge's determination that a $50,000 fine would not pose undue hardship on the defendant was permissible.

## C. *Counts Relating to a Common Scheme*

■ Finally, we must consider the government's objection to the district judge's grouping of Bradach's offenses. Section 3D1.2 of the guidelines provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Section 3D1.2(a–d) provides more specific guidance for determining whether counts involve substantially the same harm within the meaning of the rule. Under § 3D1.2(b) the court must group all counts that "involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." In Bradach's case the government concedes that "the counts do involve the same victim" (Br. 16). The government also concedes that the counts against Bradach "involve acts constituting part of a common scheme or plan." *Id.* Nevertheless, the government claims that the harm to the United States was not the same for each false declaration and therefore argues that the counts should not be grouped for sentencing purposes, thus justifying an increased sentence.

Based on the government's stipulations, this Court would have to ignore the specific mandate of § 3D1.2(b) in order to conclude

---

**4.** The pre-sentence report analyzed a $40,000 fine rather than a $50,000 fine because the report suggested an offense level of fifteen rather than seventeen. The judge's final sentence properly added an extra two level increase for Bradach's role as a leader or organizer under § 3B1.1(c) of the guidelines.

that the counts for which Bradach was convicted involved substantially different harm under the general rule set forth in that provision. Where the government has conceded that all conditions of § 3D1.2(b) have been satisfied, the explicit dictates of that guideline may not be ignored.[5]

For the foregoing reasons, the judgment of the district court is affirmed except that the special assessment is reduced to $550.[6]

---

**5.** The guidelines pertaining to grouping under § 3D1.2 were recently amended. Effective November 1, 1991, guidelines § 2J1.3(d) specifically provides that "[i]n the case of counts of perjury or subornation of perjury arising from testimony given, or to be given, in separate proceedings, do not group the counts together under § 3D1.2 (Groups of Closely–Related Counts)." Although this new guideline would have determined the outcome differently, the *ex post facto* clause prevents retroactive application of a changed guideline where the change would disadvantage the defendant. *United States v. Underwood,* 938 F.2d 1086, 1090 (10th Cir.1991); see also *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351. Since the application of § 2J1.3(d) would increase the defendant's sentence, we may not retroactively employ that guideline in this case.

**6.** The district court imposed a special assessment of $600. The assessment on the ten guideline counts should have been $500, with another $50 for Count 2, which was a pre-guideline count.