**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James E. SCHNELL, Defendant–Appellant.**

No. 92–1847.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1992.

Decided Dec. 21, 1992.

Sharon Jackson, Asst. U.S. Atty., Jill Plancher (argued), Indianapolis, IN, for plaintiff-appellee.

Philip H. Hayes, Evansville, IN (argued), for defendant-appellant.

Before POSNER and FLAUM, Circuit Judges, and ZAGEL, District Judge.*

FLAUM, Circuit Judge.

This case presents an issue of first impression in this circuit: whether the absence of a scienter element in the sentencing enhancement for possession of a firearm with an obliterated serial number, § 2K2.1(b)(4) of the Sentencing Guidelines, violates substantive due process. We hold that it does not.

The facts of this case are straightforward. In 1984, James E. Schnell was convicted of filing a false income tax return in violation of 26 U.S.C. § 7606(1). The three-year term of imprisonment to which he was sentenced was suspended, and Schnell was placed on probation for four years and fined $5,000. Schnell's probation was later revoked because he failed to file income tax returns for 1984 and 1985, and he was sentenced to ninety days imprisonment.

Schnell was advised that, as a convicted felon, he was forbidden to possess firearms. Nevertheless, on several occasions in 1987 and thereafter, Schnell sold pistols and revolvers from his home. In January 1991, agents of the Bureau of Alcohol, Tobacco, and Firearms raided Schnell's house and retrieved 57 firearms, including handguns, rifles, and shotguns. One of the shotguns had an obliterated serial number.

Schnell pled guilty to violating 18 U.S.C. § 922(g)(1), which provides:

It shall be unlawful for any person—who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition.

The relevant offense guideline for firearms violations is § 2K2.1, which the district court believed set a base level of 12 for the unlawful possession of a firearm by a felon. Section 2K2.1(b)(4) adds 2 levels when the firearm is stolen or has an altered or obliterated serial number. At his sentencing hearing, Schnell testified that he did not obscure the serial number of the single firearm, and that he was unaware that it had been obscured. The guideline provision, however, contains no scienter requirement; the district court therefore awarded Schnell the 2–point enhancement, despite the lack of any evidence that he knew of the condition of the serial number. Combined with a 2–level decrease for acceptance of responsibility and a criminal history category of II, these computations yielded a sentencing range of 12–18 months. The district court sentenced Schnell to 12 months in prison.

I.

Before turning to the main constitutional question, we address a possible error in Schnell's sentence raising the question of the retroactivity of amendments to the Sentencing Guidelines. The base offense level for violating 18 U.S.C. § 922(g) was, at the time of Schnell's offense in early January 1991, 12. See U.S.S.G. § 2K2.1(a)(2) (Nov. 1990). On November 1, 1991, amendments took effect that changed various provisions of the firearms guidelines. Amendment 374, in particular, raised the base offense level in § 2K2.1 to 14 for firearms offenses committed by "prohibited person[s]," defined as individuals who have been convicted of crimes punishable by imprisonment for more than one year. See U.S.S.G. § 2K2.1, comment. (n. 6) (Nov. 1991). The Commission explained that this amendment "revises the ... offense levels [of the firearms guidelines] to more adequately reflect the seriousness of such conduct." U.S.S.G.App. C, amend. 374.

The government and Schnell worked out a plea agreement whereby Schnell would

---

* The Honorable James B. Zagel, District Judge for the Northern District of Illinois, sitting by designation.

plead guilty to one count of possession of a firearm by a felon. On November 13, 1991, the parties submitted their agreement to the district court. Among other stipulated facts, they agreed that "Section 2K2.1 of the Sentencing Guidelines applies to this offense and establishes a base offense level of 12." Memorandum of Plea Agreement at 4. The probation officer who prepared Schnell's PSI in January 1992 continued to use the November 1990 guideline manual although the November 1991 manual was now two months old. In the section of his report titled "Offense Level Computation," the officer wrote that "[t]he guideline for an 18: U.S.C. 922(a)(1) [sic] offense is contained in 2K2.1 of the guidelines. That section provides a base offense level of 12." At Schnell's sentencing hearing, the district court adopted the factual findings in the PSI relating to the applicable guideline factors, including the base offense level, and pronounced sentence. It thereby violated 18 U.S.C. § 3553(a)(4), which requires courts to apply the guidelines that are in effect on the date the defendant is sentenced.[1]

If Schnell's sentencing had occurred in another circuit, there would have been no error. The other circuits unanimously agree that the *Ex Post Facto* Clause of the Constitution prohibits application of a revised guideline when the version in effect on the date of the defendant's sentencing imposes a more severe penalty than the version in effect on the date of his offense. *See United States v. Harotunian*, 920 F.2d 1040, 1042 (1st Cir.1990); *United States v. Young*, 932 F.2d 1035, 1038 n. 3 (2d Cir. 1991); *United States v. Kopp*, 951 F.2d 521, 526 (3d Cir.1991); *United States v. Morrow*, 925 F.2d 779, 782–83 (4th Cir. 1991); *United States v. Suarez*, 911 F.2d 1016, 1021–22 (5th Cir.1990); *United States v. Nagi*, 947 F.2d 211, 213 n. 1 (6th Cir. 1991), *cert. denied,* — U.S. —, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992); *United States v. Swanger*, 919 F.2d 94, 95 (8th

Cir.1990) (per curiam); *United States v. Sweeten*, 933 F.2d 765, 772 (9th Cir.1991); *United States v. Smith*, 930 F.2d 1450, 1452 n. 3 (10th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. Worthy*, 915 F.2d 1514, 1516 n. 7 (11th Cir.1990); *United States v. Lam Kwong–Wah*, 924 F.2d 298, 304–05 (D.C.Cir.1991).

This circuit, on the other hand, has sent inconsistent signals on the question. One panel of this court initially stated, in dictum, that the *Ex Post Facto* Clause prohibited retroactive application of a revised guideline when the change would disadvantage the defendant. *See United States v. Bradach*, 949 F.2d 1461, 1465 n. 5 (7th Cir.1991). Seven weeks later, a second panel reiterated the proposition, although without referring to *Bradach*. *See United States v. Golden*, 954 F.2d 1413, 1417 (7th Cir.1992). Only two weeks after that, yet a third panel, again in dictum, criticized *Bradach*'s reading of the relevant Supreme Court precedents and pointed out that, under *Bradach*'s reasoning, 18 U.S.C. § 3553(a)(4) must be unconstitutional. *See United States v. Bader*, 956 F.2d 708, 709 (7th Cir.1992). The *Bader* court opined:

Although the guidelines influence the exercise of discretion within the statutory range, judges may depart at appropriate times. On this understanding, a change in the sentencing guidelines is no different from, say, the institution of a get-tough policy under which the prosecutor no longer accepts pleas to lesser offenses, or the appointment of a new judge who favors longer sentences, or a change in the guidelines for parole, ... or a decision by the President to cease commuting the sentences of a class of felons. All of these may increase the time a criminal spends in prison without transgressing the ban on ex post facto laws.

*Id.* (citation omitted). Since then, we have occasionally cited *Golden* or *Bader* without

---

1. It is possible that some or all of the participants in Schnell's sentencing thought it was correct to apply the guidelines in effect on the date of Schnell's offense, rather than the date of his sentencing. While nearly all the other cir-

cuits have stated so, this circuit has not ruled definitively on the question, as discussed below. In any case, none of the pertinent sentencing documents in this case show any awareness of the potential issue.

much discussion, but in no case where an amended guideline worked a disadvantage to the defendant.[2]

 If it was error here to use the 1990 edition of the guideline manual, this court may reverse even if neither party objected in the district court. *See United States v. Belanger*, 936 F.2d 916 (7th Cir. 1991) (remanding *sua sponte* after this court discovered a serious sentencing error caused by a misreading of a criminal statute). The district court is responsible for determining whether the plea agreement conforms to the Sentencing Guidelines. *See* U.S.S.G. § 6B1.2, p.s.; *United States v. Schmeltzer*, 960 F.2d 405, 408–09 (5th Cir.) (vacating defendant's sentence where the government and the defendant entered into a plea agreement, approved by the district court, for a sentence below the statutory minimum), *cert. denied*, —— U.S. ——, 113 S.Ct. 609, 121 L.Ed.2d 544 (1992). The presently uncertain state of the law in this circuit, however, counsels against our holding that the district court committed plain error. *See United States v. Caputo*, 978 F.2d 972, 974 (7th Cir.1992) (reversing for plain error inappropriate when correction requires "entanglement ... in obscure or contestable rules of law"). The fact that the parties overlooked this issue not only in the district court, but even on appeal, further persuades us not to remand for resentencing. *See id.* at 976.

Much as we would like to settle once and for all the question of how the *Ex Post Facto* Clause affects the Sentencing Guidelines, this case is an inconvenient vehicle, since we lack the benefit of briefing on this issue due to the unexpected way the question arose. We acknowledge, however, that *Bader* remains inconsistent with the views of eleven circuits, and we call attention to a recent decision, *United States v. Bell*, 788 F.Supp. 413 (N.D.Iowa 1992), that comprehensively reviews the law of retroactivity and concludes that amended guidelines should not be used to increase punishments. In the interest of providing clear instruction to the many actors who participate in the sentencing process, we urge the next panel of this court with the opportunity to address this issue to put it to rest.

## II.

Defendants in several circuits have tried a number of statutory and constitutional arguments to challenge the absence of a *mens rea* element in § 2K2.1(b)(4).[3] To this point, none has found success. *See United States v. Mobley*, 956 F.2d 450 (3d Cir.1992) (rejecting attacks on § 2K2.1(b)(4) based on the rule of lenity, the presumption against strict liability in criminal law, and the Due Process Clause); *United States v. Singleton*, 946 F.2d 23, 24–27 (5th Cir.) (rule of lenity and due process), *cert. denied*, —— U.S. ——, 112 S.Ct. 1231, 117 L.Ed.2d 465 (1991); *United States v. Taylor*, 937 F.2d 676 (D.C.Cir.1991) (presumption against strict liability and rule of lenity). Other courts have applied § 2K2.1(b)(4) to defendants who lacked *mens rea* without addressing the constitutional issues. *See United States v. Peoples*, 904 F.2d 23 (9th Cir.1990) (per curiam); *United States v. Amerson–Bey*, 898 F.2d 681, 683 (8th Cir.1990).[4] We agree with these holdings, although on a slightly different rationale.

---

**2.** *See United States v. Foutris*, 966 F.2d 1158, 1160 (7th Cir.1992); *United States v. Wilson*, 962 F.2d 621, 628 (7th Cir.1992); *United States v. Beal*, 960 F.2d 629, 632 n. 1 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 230, 121 L.Ed.2d 166 (1992). *Wilson* invalidated the retroactive application of an amended criminal statute, rather than an amended sentencing guideline.

**3.** This subsection was designated § 2K2.1(b)(2) until November 1, 1991 and in the following cases. The 1991 round of amendments made slight changes to the provision, prescribing an enhancement if "any" firearm, rather than "the"

firearm, was stolen or had an obliterated serial number.

**4.** Each of these cases involved stolen guns rather than guns with obliterated serial numbers. Since § 2K2.1(b)(4) explicitly refers to both categories of firearms, this distinction should be irrelevant. In any event, possession of a gun with an obliterated serial number is even less defensible than possession of one that is stolen. A stolen gun often shows no visible sign of being stolen, while a gun with an obliterated serial number by itself notifies its possessor of its condition.

■ In a celebrated statement, the Supreme Court has held that "[t]he existence of *mens rea* is the rule of, rather than the exception to, the principles of Anglo–American criminal jurisprudence." *Dennis v. United States*, 341 U.S. 494, 500, 71 S.Ct. 857, 862, 95 L.Ed. 1137 (1951). It is mainly the exceptions, however, with which modern cases have been concerned. The Court has explained that there exists " 'a now familiar type of legislation whereby penalties serve as effective means of regulation' ... '[and] such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in a responsible relation to a public danger.' " *Morissette v. United States*, 342 U.S. 246, 259–60, 72 S.Ct. 240, 248, 96 L.Ed. 288 (1952) (quoting *United States v. Dotterweich*, 320 U.S. 277, 280–81, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943)). The initial question for a court reviewing criminal legislation that omits the element of *mens rea* is to determine legislative intent. *See Morissette*, 342 U.S. at 263, 72 S.Ct. at 250; *Stepniewski v. Gagnon*, 732 F.2d 567, 570 (7th Cir.1984). If it is unclear whether the legislature meant to create a strict liability crime, and if neither the statute's language nor its legislative history provides a clear answer, then established canons of statutory construction argue strongly for the court to read in the scienter element. *See Liparota v. United States*, 471 U.S. 419, 425, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985).

■ Here, however, the guideline is unambiguous. As the *Mobley* and *Taylor* courts have demonstrated, both the structure and the history of the guidelines clearly show that the Sentencing Commission intended to omit the element of *mens rea* in § 2K2.1(b)(4). To begin with, the language of the section itself makes no reference to mental states. By contrast, an earlier incarnation of one of the firearms guidelines, later consolidated into the present § 2K2.1, prescribed an enhancement when "the defendant knew or had reason to believe that a firearm was stolen or had an altered or obliterated serial number."

U.S.S.G. § 2K2.3(b)(2)(C) (Nov. 1987); *see Mobley*, 956 F.2d at 452. Likewise, the corresponding subsection of the offense guideline most analogous to § 2K2.1, the provision for unlawful receipt or possession of explosive materials, contains a scienter element. *See* U.S.S.G. § 2K1.3(b)(2) (adding 2 points when "the offense involved any explosive material that the defendant knew or had reason to believe was stolen"). Finally, the Commission in 1989 eliminated language in an earlier guideline, § 1B1.3(a)(4), that had provided as a blanket rule of construction that "specific offense characteristics ... shall be determined on the basis of ... the defendant's state of mind, intent, motive, and purpose in committing the offense." U.S.S.G. § 1B1.3(a)(4) (Jan. 1988). The present version, by contrast, simply directs courts to consult "any other information specified in the applicable guideline." U.S.S.G. § 1B1.3(a)(4); *see Taylor*, 937 F.2d at 682.

It is true that Congress included a scienter element in the definitions of the offense of being a felon in possession of a firearm, 18 U.S.C. § 922(g), and the offense of possession of a firearm with an altered or obliterated serial number, 18 U.S.C. § 922(k). *See Mobley*, 956 F.2d at 463 (Mansmann, J., dissenting). But that fact simply reflects Congress' desire not to punish ordinary, unwitting purchasers or users of firearms who would have no reason to inquire so closely into the condition of a gun. The situation of a felon who knowingly possesses a firearm that turns out to have an obliterated serial number is far less innocent. A felon is unable, at least in theory, to purchase guns from a legitimate vendor; therefore, he is likely to seek out shady characters who, unsurprisingly, often deal in stolen or altered firearms. Such guns pose a special threat to the community. As one court has explained:

It is no secret that a chain of custody for a firearm greatly assists in the difficult process of solving crimes. When a firearm is stolen, determining this chain is difficult and when serial numbers are obliterated, it is virtually impossible. Therefore, stolen or altered firearms in

the hands of people recognized as irresponsible pose great dangers, and the guideline here reflects this heightened danger.

*Mobley*, 956 F.2d at 454. Thus, the Sentencing Commission's decision to place upon a felon the burden of inquiring into the condition of any weapon that he unlawfully obtains was not inconsistent with the manifestations of Congressional intent contained in §§ 922(g) or 922(k).

█ Legislatures have plenary power to define the terms of criminal offenses. *See Chicago, B. & Q. Ry. v. United States*, 220 U.S. 559, 578, 31 S.Ct. 612, 617, 55 L.Ed. 582 (1911). Accordingly, we have held that to determine the constitutionality of criminal legislation lacking a scienter element, "we apply basically the same standards applicable to criminal statutes which do not impose strict liability." *Stepniewski v. Gagnon*, 732 F.2d 567, 571 (7th Cir.1984). Due process, we have explained, prohibits criminal statutes from shifting the burden of proof onto defendants, punishing wholly passive behavior, defining crimes in vague or overbroad language, and failing to give fair warning of illegal conduct. *Id.* The Supreme Court has also specially criticized statutes that dispense with *mens rea* because they often "criminalize a broad range of apparently innocent conduct." *Liparota*, 471 U.S. at 426, 105 S.Ct. at 2088. We see no reason to judge guidelines promulgated by the Sentencing Commission, through a constitutional delegation of power from Congress, by different standards. Section 2K2.1(b)(4) does not offend any of these norms. As explained above, a felon who obtains a gun is not engaging in "apparently innocent conduct," whether or not he knows that the gun is stolen or altered. Thus, the guideline does not violate due process.

Indeed, statutes that enhance penalties for previously defined offenses when certain aggravating circumstances are present, whether or not the defendant is aware of the circumstances, are neither new nor uncommon. Examples include the "schoolyard statute," 21 U.S.C. § 860, which enhances the penalty for distribution of drugs when the sale occurs within 1000 feet of a school, regardless of the defendant's knowledge of the proximity, *see United States v. Holland*, 810 F.2d 1215, 1222–24 (D.C.Cir.) (upholding same), *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987); *United States v. Falu*, 776 F.2d 46, 50 (2d Cir.1985) (same); 21 U.S.C. § 859, which enhances the penalty for the distribution of drugs when the recipient is a minor, regardless of the defendant's knowledge of his age, *see United States v. Pruitt*, 763 F.2d 1256, 1261–62 (11th Cir. 1985) (upholding same), *cert. denied*, 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986); 18 U.S.C. § 2423, which enhances the penalty for transportation of an individual for the purpose of prostitution when the victim is a minor, even if the defendant is unaware of the victim's age, *see United States v. Hamilton*, 456 F.2d 171 (3d Cir.) (upholding same), *cert. denied*, 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972); and 21 U.S.C. § 841(b), which prescribes elevated penalties for the possession with intent to distribute cocaine in crack form, regardless of whether the defendant knew the amount or nature of the controlled substance, *see United States v. Collado–Gomez*, 834 F.2d 280, 281 (2d Cir.1987) (upholding same), *cert. denied*, 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). Each of these statutes has been incorporated into the Sentencing Guidelines. Section 2D1.2 adds at least 2 offense levels to the base level for drug distribution when the offense involves a "protected location" or an underage individual. *See* U.S.S.G. § 2D1.2. Section 2G1.2 adds 2 offense levels to the base level for transportation of an individual for prostitution (§ 2G1.1) when the victim is a minor, plus another 2 levels if the victim is under 16, and 2 more levels beyond that if the victim is under 12. *See* U.S.S.G. § 2G1.2. Section 2D1.1 punishes possession of 1 gram of crack the same as possession of 100 grams of cocaine. *See* U.S.S.G. § 2D1.2. These statutes have been upheld against due process attacks because, again, they do not criminalize "otherwise innocent behavior"; the defendant is subject to the enhanced penalties only upon conviction of the underlying

**222**

offense, which itself normally contains a *mens rea* requirement. *See, e.g., Falu,* 776 F.2d at 50.

Congress could have added, constitutionally, a new subsection to the criminal code, say 18 U.S.C. § 922(s), providing that if a felon possesses a firearm that has an obliterated serial number, he will receive a higher penalty, whether or not he knows that the gun has been altered. The fact that it did not, and instead the Sentencing Commission wrote a guideline accomplishing the same thing, makes no constitutional difference. Some critics have argued that the Sentencing Guidelines scheme offends due process because it treats too many offense characteristics as sentencing factors rather than as substantive elements of a crime, thereby allowing prosecuting authorities to circumvent the rigorous procedural protections available to defendants in trials, such as an elevated burden of proof, heightened reliability of evidence, rights of confrontation, and so on. *See* Gerald W. Heaney, *The Reality of Guidelines Sentencing: No End to Disparity,* 28 Am. Crim.L.Rev. 161, 208–24 (1991); Note, *An Argument for Confrontation Under the Federal Sentencing Guidelines,* 105 Harv. L.Rev. 1880 (1992). Whatever validity these charges might have in other contexts, they cannot stand up here. Even if Congress made the firearm's obliterated serial number an element of a substantive firearms offense, it could still omit the element of *mens rea,* as explained above, without running afoul of the Constitution. Defendants are in no worse a position because having an obliterated serial number is merely a sentencing factor.

### III.

We hold that § 2K2.1(b)(4) of the Sentencing Guidelines comports with substantive due process. Schnell's sentence is therefore AFFIRMED.