UNITED STATES of America,
Plaintiff,

v.

Scott RICHARDSON, Defendant.

No. 03–CR–247.

United States District Court,
E.D. Wisconsin.

March 16, 2004.

Kelly B. Watzka, Milwaukee, WI, for Plaintiff.

Terry E. Mitchell, Milwaukee, WI, for Defendant.

### MEMORANDUM

ADELMAN, District Judge.

Defendant Scott Richardson was arrested by federal agents as he left a shooting range with his 13 year old son, Scotty. Defendant had gone to the range for some target practice with his son and was observed twice firing a rifle. Unfortunately, as a convicted felon, defendant was not allowed to possess a firearm. He was indicted on a charge of felon in possession contrary to 18 U.S.C. § 922(g).

Defendant pled guilty and a pre-sentence report (PSR) was prepared, which calculated his offense level as 19: base level 20 under U.S.S.G. § 2K2.1(a)(4), plus a two level enhancement under § 2K2.1(b)(4) because the firearm defendant used was allegedly "stolen"; and minus three for acceptance of responsibility under § 3E1.1.

Defendant objected to the two level enhancement under § 2K2.1(b)(4). After reviewing the evidence and hearing the arguments of counsel, I sustained the objection.

In this memorandum I set forth the basis for my decision.

█ Section 2K2.1(b)(4) provides for a two level enhancement if the defendant possessed a firearm which "was stolen, or had an altered or obliterated serial number." U.S.S.G. § 2K2.1(b)(4). This is a "strict liability" enhancement. *See United States v. Williams*, 49 F.3d 92, 93 (2d Cir.1995). It may be applied regardless of whether the defendant personally stole the gun, *see United States v. Peoples*, 904 F.2d 23, 24–25 (9th Cir.1990), or even knew or had reason to believe the gun was stolen, *see* U.S.S.G. § 2K2.1 cmt. n. 19; *see also United States v. Schnell*, 982 F.2d 216, 219–20 (7th Cir.1992).

█ However, the guideline does not define the term "stolen." In the present case, the PSR recommended imposition of the enhancement because defendant had taken to the shooting range a rifle belonging to a friend with whom he had been staying, Troy Hartley, without Hartley's specific permission. The question presented was whether § 2K2.1(b)(4) requires that the firearm be taken with the intent to deprive the owner permanently of possession, or whether (as the PSR concluded) it was sufficient that the weapon merely be taken without permission.

I concluded that the former interpretation was correct. The case of *United States v. Walters*, 269 F.3d 1207 (10th Cir. 2001) was instructive. In that case, the defendant, Kenneth Walters, was arrested for assault, and officers found a loaded handgun under the seat of the truck he was driving. *Id.* at 1210. A computer check revealed that the gun had not been reported stolen. However,

The FBI agent assigned to the case, Agent Montefusco, further investigated

whether the gun was stolen. The agent interviewed the gun's owner, Richard M. Gowers, who said that it had been missing since June or July of 1998. Gowers did not report the gun stolen, however, because he suspected that his son, Robbie Gowers, who was seventeen in 1998, had taken it.

Robbie admitted to the agent that he had taken the gun in July 1998; he said he took it for the purpose of shooting rabbits. According to Robbie, he loaned the gun to his stepbrother-in-law, Justin Montoya, but Montoya never returned it, even after Robbie asked him for it several times. Montoya, in contrast, told the agent that he intended to buy the gun from Robbie for $200, but he admitted that he never paid for it. He also reported that a few days after he received the gun he traded it to a man known only by his first name, Ryan, for one-quarter ounce of methamphetamine. With this information, FBI agents interviewed Walters again, who stated that, to his knowledge, a person named Ryan owned the gun. He admitted at his change-of-plea hearing that he possessed the gun while driving the truck. *Id.* at 1212.

Walters objected to the imposition of a § 2K2.1(b)(4) enhancement on these facts. The court rejected his argument, stating:

In the context of applying § 2K2.1(b)(4), this court has interpreted the term "stolen" to mean "all felonious takings ... with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." *United States v. Rowlett*, 23 F.3d 300, 303 (10th Cir.1994) (quoting *United States v. Turley*, 352 U.S. 407, 417, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957)).[1] The evidence

---

1. *Rowlett* was later overruled on other grounds. *United States v. Goff*, 314 F.3d 1248, 1249 n. 1 (10th Cir.), *cert. denied*, 538 U.S. 1066, 123 S.Ct. 2236, 155 L.Ed.2d 1122 (2003).

shows that Robbie took the gun from his father, Richard Gowers. Robbie then either loaned or sold the gun to Montoya. Montoya, in turn, traded the gun to Ryan for a quarter-ounce of methamphetamine. While it may be unclear who in this chain of possession first had the requisite intent to deprive Richard Gowers of the rights and benefits of ownership, it is indisputable that one or more of them did. Therefore, we conclude that the district court did not clearly err in finding that the gun was stolen.

*Id.* at 1218.

■ Thus, in determining whether the enhancement should be applied, I focused on whether the government had proven, by a preponderance of the evidence,[2] that Hartley's weapon had been taken with intent to deprive him of the rights and benefits of ownership. The facts, which were essentially undisputed, were as follows:

Following defendant's arrest, agents quickly determined that the gun belonged to Hartley. Agents contacted Hartley, who indicated that he did not give defendant permission to take the gun. Hartley stated that he would not have allowed defendant to use the weapon because he knew defendant was a felon. He further stated that defendant "must have come to his residence and took the firearm without his permission," although he did not see anyone take it. Harley did not realize the gun was gone until contacted by the agents.

However, Hartley also indicated that he did give defendant's son Scotty permission to take the gun to a sporting goods store to have a scope mounted on it and to use the gun for deer hunting. The offense conduct generally confirmed this. Defendant was observed arriving with Scotty at a sporting goods store. Defendant retrieved the gun from the trunk of his car, entered the shooting range, and fired twice in the presence of his son. Defendant was then arrested and stated that he had the gun because his son wanted to go shooting. In an affidavit provided to the defense prior to sentencing, Hartley stated that he did not consider defendant to have stolen the gun and did not wish to press charges against him.

Under these circumstances, I concluded that the government had not met its burden. There was no indication that defendant or Scotty intended to deprive Hartley of the rights and benefits of ownership.[3] The evidence supports just as well the notion that they borrowed the gun—as Hartley said Scotty could do—with the intent to return it later. Because defendant was arrested leaving the shooting range, neither he or Scotty got the chance to give the gun back to Hartley. Thus, I concluded that the government had not shown by a preponderance of the evidence that this was a "stolen" gun under § 2K2.1(b)(4).

This holding was consistent with the purposes of the § 2K2.1(b)(4) strict liability enhancement. In *Schnell,* the Seventh Circuit explained why the Commission was concerned about stolen or altered guns, and why the absence of a mens rea element to this enhancement was not problematic:

> It is true that Congress included a scienter element in the definitions of the offense of being a felon in possession of a firearm, 18 U.S.C. § 922(g), and the of-

---

2. The government bears the burden of establishing by a preponderance of the evidence the applicability of a guideline sentencing enhancement. *See United States v. Wyatt,* 102 F.3d 241, 246 (7th Cir.1996).

3. Nor was there any evidence as to who actually took the gun from Hartley's residence—defendant or Scotty.

fense of possession of a firearm with an altered or obliterated serial number, 18 U.S.C. § 922(k). But that fact simply reflects Congress' desire not to punish ordinary, unwitting purchasers or users of firearms who would have no reason to inquire so closely into the condition of a gun. The situation of a felon who knowingly possesses a firearm that turns out to have an obliterated serial number is far less innocent. A felon is unable, at least in theory, to purchase guns from a legitimate vendor; therefore, he is likely to seek out shady characters who, unsurprisingly, often deal in stolen or altered firearms. Such guns pose a' special threat to the community. As one court has explained: It is no secret that a chain of custody for a firearm greatly assists in the difficult process of solving crimes. When a firearm is stolen, determining this chain is difficult and when serial numbers are obliterated, it is virtually impossible. Therefore, stolen or altered firearms in the hands of people recognized as irresponsible pose great dangers, and the guideline here reflects this heightened danger.

982 F.2d at 220–21 (internal citations omitted).

Under this logic, the courts and the Commission have decided to allow imposition of the enhancement even if the defendant did not know the gun was stolen. However, as the facts of this case demonstrate, the language of the guideline should not be stretched even further to situations where the gun was never really stolen to begin with. A "borrowed" weapon—easily traceable to the true owner—simply does not pose the same danger as a stolen one. Indeed, in the present case agents discovered that the weapon was Hartley's the same day they arrested defendant.

Although it need not necessarily be the defendant who acts with the requisite in-

tent to deprive the owner of the rights and benefits of ownership, someone within the change of custody must do so in order for § 2K2.1(b)(4) properly to apply. Because the government failed to make such a showing here, I declined to impose the enhancement.