RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0330p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 19-4186

ANTHONY R. PALOS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:19-cr-00186-1—Benita Y. Pearson, District Judge.

Decided and Filed:  October 15, 2020

Before:  ROGERS, SUTTON, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**   Jeffrey B. Lazarus, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant.  Rebecca C. Lutzko, Robert J. Kolansky, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

ROGERS, Circuit Judge.  Anthony Palos pleaded guilty to being a felon in possession of a firearm and was sentenced to 63 months' imprisonment.  Palos makes two challenges to his sentence on appeal.  First, he argues that one of his previous drug trafficking convictions no longer qualifies as a "controlled substance offense" after our decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam), and therefore his base offense level under

the Guidelines was miscalculated.   The Government concedes that our reading of *Havis* in *United States v. Cavazos*, 950 F.3d 329 (6th Cir. 2020), is controlling on this issue and that a remand is warranted.   Second, Palos argues that he should not have received a sentencing enhancement for possession of a stolen firearm because he had no knowledge that the firearm he possessed was stolen.   But our rejection of the same contention in *United States v. Murphy*, 96 F.3d 846 (6th Cir. 1996), remains good law notwithstanding the more recent decisions of *United States v. Roxborough*, 99 F.3d 212 (6th Cir. 1996), *Havis*, and *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

Police searched Palos's Lorain, Ohio, residence on suspicion of drug trafficking and found narcotics, drug paraphernalia, and a firearm.   Palos admitted to police that he had purchased the firearm "off the streets."   The firearm was later confirmed to be stolen.   Palos, who had previously been convicted of two separate drug trafficking offenses in state court, was charged by a federal grand jury with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).   Palos pleaded guilty.

At the sentencing stage, the district court determined Palos's two previous drug trafficking convictions to be "controlled substance offenses" as defined in the career offender Guideline, U.S.S.G. § 4B1.2.   Under U.S.S.G. § 2K2.1(a)(2), a base offense level of 24 applies to a defendant who unlawfully possesses a firearm "subsequent to sustaining at least two felony convictions of . . . a controlled substance offense."   Palos conceded that his cocaine trafficking conviction from 2002 qualified as a controlled substance offense but asserted that his 2010 cocaine trafficking conviction did not.   The 2010 conviction involved a violation of Ohio Revised Code § 2925.03(A)(1), which criminalizes "knowingly . . . "sell[ing] or offer[ing] to sell a controlled substance."   Relying upon *Havis*, Palos argued that "offering to sell" cocaine was an attempt offense that fell outside of the definition of a "controlled substance offense" under the Guidelines.   Thus, according to Palos, he had only one qualifying "controlled substance offense," which meant that his base offense level would be 20 rather than 24.   *See* U.S.S.G. § 2K2.1(a)(4). The district court rejected this argument, reasoning that an "offer to sell" is a completed offense, not an attempt offense, and therefore the 2010 cocaine conviction was properly counted as a "controlled substance offense."

The district court further imposed a two-level increase for Palos's possession of a stolen firearm, pursuant to U.S.S.G. § 2K2.1(b)(4)(A). Palos again objected, arguing that the Government was required to demonstrate that Palos knew the firearm he possessed was stolen. The district court rejected this argument as well. Finally, the court enhanced the offense level by four points because Palos had possessed the firearm in connection with a drug trafficking offense. *See* U.S.S.G. § 2K2.1(b)(6)(B). After awarding Palos a three-point reduction for acceptance of responsibility, the district court calculated his total offense level to be 27. Palos was assigned a criminal history category of III, yielding an advisory Guidelines range of 87–108 months. However, the district court varied downward three levels to impose a below-Guidelines sentence of 63 months' imprisonment along with three years of supervised release. Palos timely appealed.

As the Government concedes, Palos's 2010 conviction for trafficking in cocaine does not qualify as a controlled substance offense in light of our decisions in *United States v. Cavazos*, 950 F.3d 329 (6th Cir. 2020) and *United States v. Alston*, ___ F.3d ___, 2020 WL 5755465 (6th Cir. Sept. 28, 2020). As provided in U.S.S.G. § 4B1.2(b),

> [t]he term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Similar to Ohio Revised Code § 2925.03(A)(1), under which Palos was convicted, the Texas statute at issue in *Cavazos* criminalized "offering to sell a controlled substance." 950 F.3d at 335. We noted in *Cavazos* that our earlier decision in *United States v. Evans*, 699 F.3d 858 (6th Cir. 2012), "determined that 'an offer to sell is properly considered an attempt to transfer a controlled substance.'" *Cavazos*, 950 F.3d at 336 (alteration omitted) (quoting *Evans*, 699 F.3d at 867). Because "*Havis* made clear that § 4B1.2's definition of 'controlled substance offenses' does not include attempt crimes," we held in *Cavazos* that "statutes that criminalize offers to sell controlled substances are too broad to categorically qualify as predicate 'controlled substance offenses.'" *Id.* at 337. *Cavazos* is controlling here, and Palos is thus entitled to resentencing on remand.

Although Palos's base offense level was miscalculated, the district court correctly applied the two-level enhancement for a stolen firearm. Section 2K2.1(b)(4) of the Guidelines provides:

> [i]f any firearm (A) was stolen, increase by 2 levels; or (B) had an altered or obliterated serial number, increase by 4 levels.

There is no dispute that Palos possessed a firearm and that the firearm was stolen. The plain language of the Guideline would therefore appear to apply in this case.

Palos nonetheless contends that § 2K2.1(b)(4) contains a scienter requirement, and that because Palos did not know that his gun was stolen, he cannot be subject to the enhancement. But our decisions have held to the contrary. In *United States v. Murphy*, 96 F.3d 846, 849 (6th Cir. 1996), we upheld the imposition of the stolen firearm enhancement under § 2K2.1(b)(4)(A) where the defendant did not know that the firearm he possessed was stolen. In doing so, we rejected the defendant's argument that the lack of a mens rea requirement in § 2K2.1(b)(4) violated due process. *Id.* While the defendant in *Murphy* conceded the absence of a mens rea requirement in § 2K2.1(b)(4), we nevertheless took notice of the commentary to the Guidelines, which stated that the enhancement applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen. *Id.* at 848 (citing U.S.S.G. § 2K2.1 cmt. n.19).[1] We have since relied upon *Murphy* to hold that § 2K2.1(b)(4) is a strict liability enhancement with respect to a stolen firearm. *See United States v. Gibson*, 817 F. App'x 202, 204–05 (6th Cir. 2020).

Our unpublished decision in *Gibson* rejected the precise argument that Palos presents to us: that our en banc decision in *Havis* changes things in light of our post-*Murphy* decision in *United States v. Roxborough*, 99 F.3d 212 (6th Cir. 1996). We reject the argument for many of the same reasons that we set forth in *Gibson*.

In *Roxborough*, the defendant gun dealer pleaded guilty to violating federal law by selling firearms away from his licensed premises. *Id.* at 213. Two firearms traced to the defendant were found to have obliterated serial numbers. *Id.* The district court imposed the

---

[1]The comment note in existence at the time *Murphy* was decided is substantively identical to the one in the current version of the Guidelines, located in U.S.S.G. § 2K2.1 cmt. n.8(B).

four-level enhancement in § 2K2.1(b)(4)(B), despite the absence of evidence showing that the firearms' serial numbers had been obliterated at the time defendant had sold them. *Id.* We vacated the defendant's sentence, holding that a lack of evidence linking the defaced firearms to the crime of conviction precluded application of § 2K2.1(b)(4). *Id.* at 214–15. In reaching this conclusion, we noted, "we have found nothing that persuades us that the § 2K2.1(b)(4) enhancement is, as the district court held, to be imposed by way of strict, or virtually strict, liability." *Id.* at 214. Based on this language, Palos argues that *Roxborough* recognized a mens rea requirement for § 2K2.1(b)(4). But the "strict liability" rejected in *Roxborough* was far broader than the strict liability accepted in *Murphy*. Imposing strict liability in *Roxborough* would have increased the punishment for firearms with numbers obliterated after the illegal sale, and presumably firearms stolen after they were possessed by the defendant. Rejecting that extreme version of "strict liability" obviously says nothing about strict liability for possessing or selling a firearm that has previously been stolen or had its serial number obliterated. This explains why we were not constrained by *Roxborough* when we held recently that the enhancement for an altered firearm in § 2K2.1(b)(4)(B) does not have a knowledge requirement regarding a previously altered serial number. *See United States v. Sands*, 948 F.3d 709, 713 (6th Cir. 2020).

The issue of attenuation between the firearm and the crime of conviction that was held dispositive in *Roxborough* is thus not present in this case. There is no dispute that Palos's firearm was stolen at the time Palos unlawfully possessed it. We have twice distinguished *Roxborough* on this basis in upholding the imposition of the stolen firearm enhancement for defendants convicted of being felons in possession of a firearm. *See Gibson*, 817 F. App'x at 204–5; *United States v. Burns*, 109 F. App'x 52, 57 (6th Cir. 2004).

Moreover, despite Palos's argument to the contrary, *Havis* does not require reconsideration of our precedents holding that § 2K2.1(b)(4) is a strict liability enhancement. *Havis* held that the text of the Guidelines controls in cases where it conflicts with the Guidelines' commentary. 927 F.3d at 386. At issue in *Havis* was the commentary to the career offender Guideline, U.S.S.G. § 4B1.2, which stated that a "controlled substance offense" included attempt crimes. *Id.* at 385. Because the text of the Guideline clearly excluded attempt crimes from the

definition of a "controlled substance offense," the commentary stating otherwise was not binding. *Id.* at 386. Applying *Havis* to this case, Palos contends that the commentary to § 2K2.1 stating that the stolen firearm enhancement "applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen" "improperly expands the [G]uideline['s] text." We rejected this argument in *Gibson* and do so again here. In *Gibson*, we explained that, "[w]hile the Application Note in *Havis* added a new category of crime to an exhaustive list contained in the Guideline text itself, here, the enhancement's text appears to bear the strict liability interpretation contained in the commentary." 817 F. App'x, at 204. Indeed, numerous indicators point strongly in favor of this strict liability interpretation. First, there is nothing in the language "[i]f any firearm [] was stolen, increase by 2 levels," that would hint at a knowledge requirement. U.S.S.G. § 2K2.1(b)(4). Further, the presence of express knowledge requirements in other parts of § 2K2.1 suggests that the Sentencing Commission intentionally left out such a requirement in § 2K2.1(b)(4). In § 2K2.1(b)(6), for example, the offense level is increased by four levels if the defendant "possessed or transferred any firearm or ammunition *with knowledge, intent, or reason to believe* that it would be transported out of the United States" (emphasis added). Moreover, this construction of § 2K2.1(b)(4) is sensible in light of the underlying purposes of the Guideline:

> The strict liability enhancement for possession of a stolen firearm is rationally related to the legitimate governmental goal of crime prevention: [the stolen firearm enhancement] was promulgated on the premise that "stolen firearms are used disproportionately in the commission of crimes." Further, an ex-felon who obtains a stolen firearm is more culpable than one who legally obtains a firearm.

*Murphy*, 96 F.3d at 849 (quoting *United States v. Goodell*, 990 F.2d 497, 499 (9th Cir. 1993)). Finally, as we pointed out in *Gibson*, circuit courts, including ours, have unanimously recognized the absence of a scienter requirement in § 2K2.1(b)(4). *See* 817 F. App'x at 205 (collecting cases). Several of these circuits have gone so far as to say that the strict liability nature of § 2K2.1(b)(4) is "clear and unequivocal." *United States v. Mobley*, 956 F.2d 450, 453 (3d Cir. 1992); *accord Goodell*, 990 F.2d at 499 n.2; *United States v. Schnell*, 982 F.2d 216, 220–22 (7th Cir. 1992).

Palos's final argument—that the Supreme Court's recent decision in *Rehaif*, 139 S. Ct. at 2191, counsels in favor of finding a knowledge requirement in § 2K2.1(b)(4)—also lacks merit. *Rehaif* established a mens rea requirement for convictions under 18 U.S.C. § 922(g), a statute without an express mens rea element. 139 S. Ct. at 2200. As a basis for its decision, the Court in *Rehaif* invoked "the presumption in favor of scienter even when Congress does not specify any scienter in the statutory text." *Id.* at 2195. Palos contends that this presumption should apply with equal force to the text of § 2K2.1(b)(4), which he says is also silent on the issue of mens rea. However, we have observed that when it comes to the existence of a mens rea element, statutes and the Sentencing Guidelines are "fundamentally distinct." *Murphy*, 96 F.3d at 848–49. Accordingly, this court in *Murphy* declined to extend to § 2K2.1(b)(4) a similar mens rea presumption for possession of an unregistered firearm under 26 U.S.C. § 5861(d). We noted that the mens rea presumption for § 5861(d), first articulated in *Staples v. United States*, 511 U.S. 600, 619 (1994), "deal[t] only with the requisite intention for conviction of a crime" and thus should not "include sentencing enhancements within its scope." *Murphy*, 96 F.3d at 848–49. This distinction between statutes and Guideline enhancements is logical in light of the longstanding principle that "it is not unusual to punish individuals for the unintended consequences of their *unlawful* acts." *Dean v. United States*, 556 U.S. 568, 575 (2009). As the Seventh Circuit has explained, the mens rea requirement in 18 U.S.C. § 922(g) "simply reflects Congress' desire not to punish ordinary, unwitting purchasers or users of firearms who would have no reason to inquire so closely into the condition of a gun." *Schnell*, 982 F.2d at 220. In contrast, a felon who knowingly purchases a firearm "is not engaging in 'apparently innocent conduct,' whether or not he knows that the gun is stolen or altered." *Id.* at 221 (quoting *Liparota v. United States*, 471 U.S. 419, 426 (1985)). Accordingly, the presence of a scienter requirement in § 922(g), as determined by the Court in *Rehaif*, is not helpful to Palos.

For the reasons set forth above, we reverse in part the judgment of the district court and remand for resentencing. We affirm the district court's decision to impose a two-level enhancement for possession of a stolen firearm under U.S.S.G. § 2K2.1(b)(4)(A).