**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ron HARRIS, Defendant–Appellant.**

No. 92–1910.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1992.

Decided June 7, 1993.

K. Tate Chambers, Asst. U.S. Atty., Peoria, IL, Rodger A. Heaton, Asst. U.S. Atty. (argued), Springfield, IL, for plaintiff-appellee.

Joseph J. Bembenek (argued), Quinn, Johnston, Henderson & Pretorius, Peoria, IL, for defendant-appellant.

Before FLAUM and ROVNER, Circuit Judges, and LAY, Senior Circuit Judge.[*]

ILANA DIAMOND ROVNER, Circuit Judge.

After pleading guilty to one count of possessing methamphetamine with intent to distribute, Ron Harris was sentenced to 32 months in prison and three years of supervised release. Harris appeals his sentence. Although we must dismiss his appeal in part, we otherwise remand for resentencing.

I. BACKGROUND

On January 17, 1989, FBI agents interviewed Harris about possible drug trafficking

[*] The Honorable Donald P. Lay of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

after an informant told them that he had been buying methamphetamine from Harris since 1986. During the interview, Harris admitted that he had purchased nine ounces of the drug from an individual named Robert Keith between 1986 and 1989. On February 9, 1989, federal agents searched Harris' home and found 37 grams of methamphetamine and approximately 40 firearms. Harris was indicted on June 22, 1989. He was charged with conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Harris entered into a plea agreement on December 10, 1991. He agreed to plead guilty to the possession count and to cooperate with the government in other drug trafficking investigations and prosecutions. The government agreed to drop the conspiracy count and "reserve[d] the right" to move for a downward departure from the Sentencing Guidelines range pursuant to Guidelines section 5K1.1. During the plea negotiations, Harris refuted his January 1989 statement and told the government that he had purchased four rather than nine ounces of methamphetamine from Keith during the 1986–1989 period.

Probation Officer Wade Maddox prepared Harris' presentence report ("PSR"). He found that Harris had purchased nine ounces of methamphetamine from Keith and that Harris had distributed a total of 587.01 grams of the drug,[1] so that Harris' base offense level was 26 under Guidelines section

$2D1.1$.[2] Maddox also recommended a two-level increase under section $2D1.1(b)(1)$ because Harris had possessed firearms while committing his crime, and a two-level decrease under section 3E1.1 because Harris had accepted responsibility for his conduct. Maddox thus calculated Harris' adjusted offense level to be 26.

Harris' criminal history included three prior convictions; all in state court. On April 1, 1988, Harris was arrested and charged with eavesdropping after placing a listening device on his former wife's phone and broadcasting her telephone conversations on citizen's band radio. On July 29 of that year, Harris was arrested for "communicating with a witness," after he verbally threatened his ex-wife in an attempt to deter her from testifying against him in the eavesdropping case. Finally, Harris was arrested on February 9, 1989 and charged with five counts of unlawful weapons use in connection with the firearms that had been found in his home on that day. The three cases were consolidated for plea and sentencing, which took place on May 25, 1989. Harris pled guilty to the first two offenses and to four of the firearms charges. He was sentenced to concurrent one-year terms of incarceration in the first two cases [3] and a consecutive four-year term in the firearms case.

The probation officer considered the first two cases to be related under Guidelines section 4A1.2,[4] so that together they produced two criminal history points under section 4A1.1(b).[5] The firearms case, treated as

---

1. In addition to Harris' purchases from Keith, the total drug quantity was based on a number of transactions that are not at issue in this appeal.

2. In fact, 587.01 grams of methamphetamine produce a base offense level of 28 under section 2D1.1. The government has waived its opportunity to challenge this error, which it did not raise either below or on appeal.

3. The PSR (¶ 48) states that these two sentences were concurrent. In his objections to the PSR and in his appellate brief, Harris' counsel describes the two sentences as consecutive (although that of course is not the basis of his objections). If that were true, Harris would have received six rather than five criminal history points under sections 4A1.1 and 4A1.2. Because the government has not objected to the PSR characterization, we will not question its accura-

cy. In any event, the difference is not significant because Harris would belong in criminal history category III whether he received five or six points.

4. Guidelines section 4A1.2(a)(2) provides:
 Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c). Use the longest sentence of imprisonment if concurrent sentences were imposed and the aggregate sentence of imprisonment imposed in the case of consecutive sentences.

5. Guidelines section 4A1.1 provides:
 **Criminal History Category**
 The total points from items (a) through (f) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.

unrelated to the other cases, gave rise to three additional criminal history points under section 4A1.1(a). The total of five points placed Harris in criminal history category III.

Harris submitted several objections to the PSR, but the district court nonetheless adopted its recommendations. The offense level of 26 and criminal history category of III resulted in a sentencing range of 78–97 months. U.S.S.G. Ch. 5, Pt. A. After sentencing hearings were held on March 13 and April 16, 1992, the government moved for a downward departure under Guidelines section 5K1.1, requesting that Harris' sentence be reduced by at least forty percent. Harris requested that he be sentenced to probation only. Taking into account both the seriousness of Harris' offense and his significant progress toward rehabilitation, the court settled on a sixty percent departure and sentenced Harris to 32 months of incarceration and three years of supervised release.

Harris renews two of his objections on appeal. First, he contests the district court's finding that he bought nine rather than four ounces of methamphetamine from Keith between 1986 and 1989. Second, he argues that the district court should have considered all three of his prior convictions to be related for purposes of calculating his criminal history points under Guidelines section 4A1.1.

## II. AMOUNT OF METHAMPHETAMINE

Harris argues that the district court erred when it chose to credit his original statement that he had bought nine ounces of methamphetamine from Keith rather than his later statement that he had purchased only four ounces. Harris contends that his revised statement was more reliable because of his

(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).

6. Any amount between 400 and 700 grams of methamphetamine produces a base offense level of 28 under section 2D1.1. As noted earlier, Harris was erroneously placed at level 26, which is actually appropriate for offenses involving

"questionable mental state and drug addiction" at the time of the earlier interview. If the court had credited the later statement, Harris' total drug quantity would have been 445.26 instead of 587.01 grams. Harris recognizes that the lesser amount would not have resulted in a different offense level,[6] but argues that the error is nonetheless significant because the amount of methamphetamine influenced the court's decision to impose a sentence of incarceration rather than probation:

> Although the correct calculation of the weight would not alter the trial court's ultimate determination of the offense level, in view of . . . the court's direct reliance on the weight of the methamphetamine in its rejection of the Defendant's plea for probation, it is clear that the weight of the substance involved was a major factor in the court's sentence of incarceration.

(Harris Brief at 7–8.)

■ 18 U.S.C. § 3742 provides for limited appellate review of departures from the Guidelines. As *Williams v. United States* explains:

> A defendant may file an appeal if a sentence was imposed in violation of law or as a result of an incorrect application of the Guidelines, or if the district court departed upward from the Guideline range. § 3742(a).

— U.S. ——, ——, 112 S.Ct. 1112, 1118, 117 L.Ed.2d 341 (1992). In other words, unless the departure is from an incorrectly calculated guidelines range, a defendant may appeal the extent of a downward departure only if it is based on a violation of law.[7] *United States v. Dean*, 908 F.2d 215, 217–18 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2801, 115 L.Ed.2d 974 (1991); *United States v.*

100–399 grams of the drug. In any event, the offense level would not change if Harris' amount were reduced from 587 to 445.

7. We have held, for example, that a refusal to depart can be appealed if it is based on the district court's erroneous legal conclusion that it lacks authority to do so. *United States v. Poff*, 926 F.2d 588, 591 (7th Cir.) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991).

*Gant*, 902 F.2d 570, 572–73 (7th Cir.1990). A defendant cannot circumvent that rule by simply characterizing the departure as an incorrect application of the guidelines. *Dean*, 908 F.2d at 217–18.

■ Here, the district court's alleged error does not involve an incorrect application of the Guidelines because, as Harris admits, both drug quantities produce the same offense level. Nor does Harris allege that the departure resulted from any violation of law. Still, because a factual error can rise to the level of a due process violation—and thus an appealable "violation of law"—we must consider that possibility. *United States v. Franz*, 886 F.2d 973, 980–81 (7th Cir.1989). Of course, not every factual inaccuracy amounts to a constitutional violation. *Id.; see also United States ex rel. Villa v. Fairman*, 810 F.2d 715, 718–19 (7th Cir.1987). As we explained in *Franz:*

> [A] defendant's constitutional rights can be violated if he demonstrates "grave doubt as to the veracity of the information . . . [and] that the court relied on the false information in determining the sentence."

886 F.2d at 980 (quoting *United States v. Eschweiler*, 782 F.2d 1385, 1387 (7th Cir. 1986)).

Harris has satisfied neither of those conditions. First, he has not raised "grave doubt as to the veracity" of the nine-ounce figure. The district court's finding was supported by Harris' own 1989 statement and by the testimony of Tazewell County Deputy Sheriff Patrick Landrith, who was present at the 1989 interview and testified at the sentencing hearing that he did not recall Harris being under the influence of drugs at that time. Aside from his own 1991 statement, Harris presented no evidence to contradict the nine-ounce figure or to support his claim that drug use had affected his earlier statement. The district court's decision thus came down to a simple credibility determination. The court chose to credit Harris' original statement in conjunction with Landrith's testimo-

ny rather than Harris' revised statement, which the court considered to be motivated by self-interest. The court's determination is amply supported by the record and Harris has given us no reason to doubt its accuracy.

Harris has also failed to establish that the district court relied on the alleged error in determining Harris' sentence. Although Harris asserts that the court relied on the amount of methamphetamine in rejecting his request for probation, the record does not support that contention. The court explained its decision as follows:

> The Court adopts the findings and guidelines application in the pre-sentence report, that the guideline's range that was established was 78 to 97 months. That's based on a number of factors and the motion for [sic] of which is the weight of drugs that have been attributable to you. And that total weight was set at 587 grams which is quite a substantial amount of methamphetamine.
>
> To tell you right at the front end, I cannot accept your attorney's recommendation to be placed on probation because I think it would deprecate the seriousness of the offense if I represent [sic] from a range of 78 of 97 months down to probation.

Although it is true that the court *noted* the amount of drug distributed, it did not indicate that its decision was based on that factor. And, even if it had, there is no reason to believe that a difference in amount not significant enough even to alter the applicable Guidelines range would have persuaded the district court to reach so radically different a result.

Harris has therefore failed to establish that the court's alleged factual error deprived him of due process. He has not asserted any other violation of law and has conceded that the alleged error did not result in an incorrect application of the Guidelines. We must therefore dismiss this portion of Harris' appeal for lack of appellate jurisdiction.[8]

---

8. The outcome would not change if we were to consider Harris' claim on its merits. 18 U.S.C. § 3742(e) directs us to accept the district court's factual findings unless they are clearly erroneous. *See also United States v. Yanez*, 985 F.2d 371, 376 (7th Cir.1993). Under that standard:

> We defer to the district court's factual findings and credibility determinations unless they are without support in the record. . . . "A finding

## III. CRIMINAL HISTORY POINTS

 Harris also contends that the district court erred in calculating his criminal history category. Specifically, he argues that the district court failed to follow Application Note 3 to Guideline section 4A1.2, which provides that "cases are considered related if they ... were consolidated for trial or sentencing." The note is significant because of the requirement in section 4A1.2(a)(2) that prior sentences imposed in related cases be treated as one sentence for purposes of calculating criminal history points. Harris argues that because his three state court cases had been consolidated for sentencing, the district court should have considered all three to be related and treated his consecutive sentences as a single sentence. That would have produced three rather than five criminal history points under section 4A1.1, which would have yielded a criminal history category of II and a sentencing range of 70–87 rather than 78–97 months.[9]

The district court refused to follow Application Note 3 because of this court's decision in *United States v. Elmendorf,* 945 F.2d 989 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 990, 117 L.Ed.2d 151 (1992), which

held that when prior cases had been consolidated solely for purposes of convenience and were otherwise unrelated, the resulting sentences could be counted separately notwithstanding Application Note 3. That decision has been called into question by the Supreme Court's recent holding in *Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993), that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." We therefore vacate Harris' sentence and remand for resentencing in light of *Stinson.*

---

of fact is clearly erroneous only if, after reviewing the entire evidence, we are left 'with the definite and firm conviction that a mistake had been committed.' "
*United States v. Brown,* 944 F.2d 1377, 1379–80 (7th Cir.1991) (quoting *United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989)). Thus, having established that the district court's finding regarding the amount of methamphetamine was supported by record evidence, we would have left that finding undisturbed in any event.

9. In November 1991, Application Note 3 was amended to read:

 Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (*i.e.,* the defendant is arrested for the first offense prior to committing the second offense).

Although the district court did not indicate which Guidelines version it was using, its discussion makes clear that it relied on a version that predated this amendment. That choice may have been erroneous under 18 U.S.C. § 3553(a), which directs courts to apply the guidelines and policy statements that are in effect on the date of sentencing, in this case April 1992. As we recently explained in *United States v. Schnell,* 982

F.2d 216, 218–19 (7th Cir.1992), however, every circuit except our own has held that the Ex Post Facto Clause of the Constitution prohibits application of a guidelines provision not in effect on the date of the offense if the new provision operates to the detriment of the defendant. Although this Circuit has suggested that even a detrimental retroactive application may not always be unconstitutional (*see United States v. Bader,* 956 F.2d 708, 709 (7th Cir.1992)), we have by and large adhered to the majority rule (*see, e.g., United States v. Willey,* 985 F.2d 1342, 1345 n. 2, 1350 (7th Cir.1993); *United States v. Golden,* 954 F.2d 1413, 1417 (7th Cir.1992)).

Here, application of the amended note might indeed have increased Harris' sentence. Because Harris was arrested between each of his three offenses, the new note seems to require not only that the firearms case be treated as unrelated to the eavesdropping and communicating cases, but that those two cases be considered unrelated as well. Harris would then have received seven criminal history points and been classified in criminal history category IV. For that reason and because neither party has raised the issue either below or on appeal, we will not disturb the district court's choice of Guidelines editions.