UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas P. KOPSHEVER,
Defendant–Appellant.

Nos. 92–2562, 92–2563.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 17, 1993.

Decided Sept. 23, 1993.

Norman R. Smith, Asst. U.S. Atty., Crim. Div., Fairview Heights, IL (argued), for plaintiff-appellee.

Phillip J. Kavanaugh, Office of the Federal Public Defender, East St. Louis, IL, for defendant-appellant.

Before RIPPLE and MANION, Circuit Judges, and SHADUR, Senior District Judge.[*]

SHADUR, Senior District Judge.

Thomas Kopshever ("Kopshever") appeals from the concurrent sentences imposed on him after he pleaded guilty to two informations, one based on a charge of counterfeiting a large number of $20 Federal Reserve Notes and the other charging both (1) fraud against financial institutions and (2) wire fraud. We have jurisdiction of his appeals under 28 U.S.C. § 1291.

We dismiss Kopshever's appeal on the counterfeiting charge for lack of standing. But because his sentence on the fraud charges involved at least two clear errors, we reverse and remand our No. 92–2653 (Case No. 92 CR 40021–JLF in the district court) for resentencing.

*Facts and Procedural History*

On April 2, 1992 Kopshever changed his original pleas of not guilty to two indictments, which had been brought in the Southern District of Illinois, to pleas of guilty to newly-brought superseding informations embracing the same charges. Case No. 91–40056–JLF charged him with the use of a color photocopier and other tools to counterfeit 756 Federal Reserve Notes in violation of 18 U.S.C. § 471. Case No. 92–40021–JLF comprised two lengthy and detailed counts:

1. Count 1 charged a conspiracy to commit loan and credit application fraud in violation of 18 U.S.C. § 371. Kopshever—who owned Jackson County RV and Marine Center—and his co-conspirators would solicit acquaintances to put their names on false credit applications and sales agreements. However, the loan proceeds went not towards financing the sale of goods but for the business and personal use of the conspirators.

2. Count 2 charged wire fraud in violation of 18 U.S.C. § 1343. Substantively it alleged Kopshever's extensive abuse of his trustee status to bilk three elderly women of their life savings.

As is usually the case with negotiated pleas, the plea agreement included an estimate of the components entering into the calculation under the Sentencing Guidelines ("Guidelines")[1]—in this instance a calculation agreed on by the parties and then concurred in by the probation officer who was assigned to prepare the presentence investigation report ("PSI"). That estimate reflected an adjusted offense level of 20 without additional enhancements, producing a suggested Guidelines range of 33 to 41 months' incarceration.

Under the plea agreement the government had stated its intention to recommend a midrange custodial sentence of 37 months. But when the parties arrived at the district court for sentencing, the district judge expressed dissatisfaction with the Guidelines calculations and their outside limit of a 41–month sentence, warning of a possible departure as well as identifying one error that the judge perceived in the calculations.[2] Kop-

---

[*] Honorable Milton I. Shadur, of the Northern District of Illinois, is sitting by designation.

1. We have recently summarized the methodology involved in imposing a Guidelines sentence in *United States v. Lallemand*, 989 F.2d 936, 938 (7th Cir.1993):

   Sentencing under the guidelines begins with the "base offense level," that is, the base level for a specified offense or group of offenses.... After the base offense level is determined, adjustments are made for the presence of aggra-

vating and mitigating factors. When the process of adjustment is complete, the sentencing range is read off from the sentencing table, a matrix of offense levels and criminal histories; and the judge then picks a sentence within the range unless he decides to make an upward or downward departure.

2. Apart from his general (and understandable) unhappiness with the way that the Guidelines calculations dealt with the perpetrator of multiple offenses of such an egregious nature, the only

shever's counsel then asked for added time to be able to address the district judge's stated concerns, and the judge postponed sentencing for three weeks. In the meantime, he requested that the parties submit filings as to the possible enhancement of the sentence and that the probation officer tender an addendum on the subject.

When that addendum was submitted, the probation officer had responded to the district court's concerns by recommending no fewer than four upward adjustments to the earlier Guidelines calculation of the offense level:

    1. a four-level increase under Guideline § 2F1.1(b)(6) for fraud affecting a financial institution and involving more than $1 million in gross receipts to the defendant;

    2. a two-level increase under Guideline § 3B1.1 for the defendant's being an organizer, leader or supervisor of criminal activity;

    3. another two-level increase under Guideline § 3A1.1 for the defendant's targeting of unusually vulnerable victims; and

    4. an upward departure from the Guidelines in light of the factor mentioned in Guideline § 5K2.3: extreme psychological injury to the victims.

Meanwhile the prosecutor had filed a detailed point-by-point memorandum in support of the parties' original agreed-upon calculation. That was then followed by a less-extended memorandum by defense counsel to the same effect.

At the postponed hearing the district judge reasserted his belief that neither the original PSI nor the plea agreement would call for a sufficiently stiff penalty (June 22, 1992 Tr. 5):

    I feel an upward departure is very much warranted in this case, and I'll state my reasons pretty much here in a minute. I'm willing to hear anything you wish to say about it but this is an aggrievous [sic] case. There are victims. There are people out there that are hurting, financial

institutions that have been taken advantage of, and I think it merits a substantial enhancement, and maybe even a departure after the enhancement.

True to his word, the district judge increased the offense level from 20 to 28 by adopting each of the first three suggestions contained in the probation officer's addendum, then decreed a two-level upward departure on the basis reflected in the addendum's fourth suggestion. That led to concurrent custodial sentences of 60 months on Count 1 (that was the maximum statutory sentence under 18 U.S.C. § 471) and 120 months on Count 2 in Case No. 92–40021–JLF, and a concurrent sentence of 24 months on the single count in Case No. 91–40056–JLF.

### *Kopshever's Counterfeiting Sentence*

■ Kopshever's appeal from his sentencing on the counterfeiting information is puzzling: It stems from his counsel's mistaken belief that the district court had imposed a 120–month sentence on that charge, rather than the actually-pronounced sentence of 24 months. Almost equally puzzling is the district judge's apparent reason for the imposition of that sentence to begin with: It was based on his mistaken belief that the counterfeiting charge was subject to a separate Guidelines calculation leading to a sentencing range of 18 to 24 months (that belief is reflected in the judge's determination of the Guidelines range that he included in the judgment and commitment order on that charge). On the contrary, as Guideline §§ 3D1.1–3D1.5 teach (and as the probation officer had set out in the PSI), the appropriate Guidelines treatment of any sentencing on multiple charges is to make a single calculation for all of those charges (containing appropriate adjustments to reflect the number and grouping of the counts and the relative seriousness of the crimes involved).

As it turns out, those combined mistakes insulate the 24–month counterfeiting sentence from review. It will be recalled that

---

specific item then mentioned by the district judge reflected his view that Guideline § 3A1.1 (which provides for a two-level increase where the offense involved an especially vulnerable victim) calls for a separate two-level stepup for *each*

such victim. That is not a fair reading of the Guidelines' structure—see *United States v. Caterino,* 957 F.2d 681, 684 (9th Cir.1992); and cf. *United States v. Boula,* 932 F.2d 651, 656 (7th Cir.1991).

the original plea agreement had reflected Kopshever's agreement to an analysis that produced a sentencing range of 33 to 41 months. Had the district judge imposed a sentence within that range, any attempted appeal by Kopshever would have been dismissed for lack of jurisdiction—typical of our numerous decisions to that effect is our statement in *United States v. Solis*, 923 F.2d 548, 551 (7th Cir.1991):

> Absent an error of law or a misapplication of the guidelines, this court lacks jurisdiction to review sentences within the appropriate guidelines range.

Under the unusual situation presented here, whether the proper Guidelines calculation is that contained in the plea agreement or the much higher number adopted by the district judge or anything in between, in all events the 24–month sentence is *below* the Guidelines range. Kopshever lacks standing, then, to challenge that sentence so long as it remains concurrent with the sentence to be imposed on the other counts on remand. Accordingly his appeal in Case No. 91 CR 40056–JLF (our No. 92–2652) is dismissed.

### Kopshever's Fraud Sentences

Kopshever attacks each respect in which the district judge elevated his sights for sentencing purposes above those that had been jointly sponsored by the parties in the plea agreement and that were initially concurred in by the probation officer. Because certain of those adjustments were clearly in error, while the other matters either (1) will not recur on resentencing (such as Kopshever's claim of having been given insufficient advance notice of adverse facts, in violation of *Burns v. United States*, — U.S. —, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991)) or (2) may be perceived differently by another judge on resentencing, we will limit our discussion to two errors identified by Kopshever's counsel.

### 1. *Selection of the Applicable Guidelines*

Until November 1, 1991 Guideline § 2F1.1(b)(6) provided:

> If the offense substantially jeopardized the safety and soundness of a financial institution, increase by 4 levels. If the resulting offense level is less than level 24, increase to level 24.

By an amendment effective November 1, 1991 the Sentencing Commission expanded that four-level increase to apply not only where the offense "substantially jeopardized" a financial institution (now Guideline § 2F1.1(b)(6)(A)) but also where the offense "affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense" (Guideline § 2F1.1(b)(6)(B), the "added subparagraph").

In this instance Kopshever's frauds clearly "affected" financial institutions, and his frauds certainly topped the $1 million mark. Even though his counsel contends otherwise (in part by arguing that the defrauded institutions must be looked at individually rather than collectively), his objections carry no persuasiveness. But nothing in the record suggests that the more demanding test of "substantially jeopardiz[ing] the safety and soundness" of any of the defrauded institutions has even been approached, let alone satisfied.

As stated earlier, the district judge did apply a four-level increase under Guideline § 2F1.1(b)(6), and he did so on the basis of the added subparagraph. That being so, we are called on to engage in a two-part inquiry:

1. Did Kopshever's offenses extend past November 1, 1991 so as to eliminate any question that the added subparagraph was applicable to his criminal conduct?

2. If that question gets a negative answer, does the application of the Guidelines in effect at the sentencing date, rather than those in effect at the time that Kopshever committed his crimes, pose ex post facto difficulties?

On the first of those questions, the parties entered into an extended Stipulation of Facts (over 17 pages in length) contemporaneously with the plea agreement, setting out all of the facts as to both of the fraud counts. All of the detailed activities described there antedated November 1, 1991 by more than a full year, with just one exception—and that one exception involved Kopshever's tendering of three NSF checks to one of the victims in the summer of 1991

(again several months before November 1 of that year).

Thus lacking any factual support in the record, the government has had to fall back on the language of the information to which Kopshever pleaded guilty. Count 2 alleged a scheme to defraud "between on or about May 1988 and continuing until on or about November 1991."[3] In essence the government argues that Kopshever's plea constitutes an admission that his activities continued beyond the effective date of the Guideline's added subparagraph.

But even if the concept of such a generalized admission were somehow to apply despite the express and detailed stipulation that is factually at odds with the government's present contention, the premise itself is flawed. "On or about"—even more than its siblings "on or before" and "on or after"—"serve[s] to obscure the beginning and end points of the conspiracy, making it impossible to place the alleged illegal activity within a time frame" (*United States v. McCown*, 711 F.2d 1441, 1450 (9th Cir.1983)). At worst, Kopshever's having pleaded guilty to the information cannot be viewed as an express admission that his fraudulent conduct continued past November 1, 1991, particularly in the face of the stipulation's detailed evidence to the contrary.[4]

■ That then brings us to the second part of the inquiry: whether application of the added subparagraph of Guideline § 2F1.1(b)(6)—the Guideline in effect at the time of sentencing (see 18 U.S.C. § 3553(a)(4))—runs afoul of the Ex Post Facto Clause. Even though Kopshever did not make that argument to the district judge, both the sentencing sequence below[5] and the gravity of the constitutional concerns at stake command that we exercise our discretion to examine it for the first time (cf. *United States v. Wilson*, 962 F.2d 621, 627 (7th Cir.1992), considering an ex post facto argument raised for the first time in a reply brief).

■ In this instance the United States has conceded that "[r]etroactive application of the amended subpart would violate the *ex post facto* clause" (United States Br. 16). Except for a suggestion by way of dictum in one of our opinions, it has been universally held that when the Sentencing Commission amends the Guidelines to increase the severity of a punishment, the Ex Post Facto Clause prohibits application of the amended Guidelines to crimes performed before the amendment's effective date[6]—at least so

---

3. Count 1 charged another conspiracy "continuing until on or about November 1990."

4. When pressed at oral argument to pinpoint a specific action that occurred during or after November 1991, the government directed us (1) to Kopshever's counterfeiting activity that took place after the critical date and (2) to Kopshever's asserted holding of trust assets after November 1991. As for the first of those assertions, the date of Kopshever's commission of a separate criminal offense is of course irrelevant to the question of what Guidelines provisions apply to the fraud charges. As for the second, a malefactor's mere retention of the proceeds of a fraud does not of course equate to the time when the fraud was committed (if that were so, the statute of limitations might never run on a fraud charge). But we leave the entire factual issue of the time of the offense for the district court to examine in the first instance.

5. It will be remembered that the factor we are now considering was not one that the district judge originally identified as a basis for potential enhancement of the Guidelines calculation at the time that he deferred the sentencing to comply

with the Supreme Court's directive in *Burns*. Thus the parties' written submissions did not have any opportunity to speak to the issue. And it was not until the actual date of sentencing that the parties learned that the district court would apply that factor, which had been identified for the first time in the probation officer's supplement.

6. Despite a number of our recent opinions that point in that direction (see, e.g., such cases as *United States v. Chevalier*, 1 F.3d 581, 585 n. 3, *United States v. Harris*, 994 F.2d 412, 416 n. 9 (7th Cir.1993) and *United States v. Willey*, 985 F.2d 1342, 1345 n. 2, 1350 (7th Cir.1993)), we remain the only circuit that has not expressly so ruled (see the contrary suggestion via dictum in *United States v. Bader*, 956 F.2d 708, 709 (7th Cir.1992)). Indeed, since our opinion in *United States v. Schnell*, 982 F.2d 216, 218 (7th Cir. 1992) listed the unanimous decisions elsewhere, that list has been enlarged by the Eighth Circuit's decision in *United States v. Bell*, 991 F.2d 1445 (8th Cir.1993). *Schnell*, 982 F.2d at 219—which was authored by one member and included a second member of the *Bader* panel—"urge[d] the next panel of this court with the opportunity to

long as a sentence falling within the Guidelines range under the amendment would have been a sentence requiring an upward departure from the pre-amendment Guidelines range (*Miller*, 482 U.S. at 432–33, 107 S.Ct. at 2452).

We are of course mindful of the fact that the district court could have reached the same result by applying the pre-amendment Guidelines and then departing upward on the theory that the earlier version did not adequately figure Kopshever's offense (see *Willey*, 985 F.2d at 1350). And we are equally mindful of the potential use of the harmless error doctrine in that context (see the statement in *Williams v. United States*, — U.S. —, — – —, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992) that "once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless"). But two policy considerations are important in that respect:

1. Sentencing, with its impact on human liberty, is too serious a business to be wholly result-oriented—either on the part of district judges or on the part of this court. After all, the constraints that we have consistently imposed on departures from any Guidelines sentence contrast sharply with the nonreviewability of within-Guidelines sentence as a jurisdictional matter. In light of that contrast, we should not lightly assume that a conscientious district judge will feel free to depart upward—once the Guidelines range is properly determined—to the same extent that the judge had felt free to sentence within a Guidelines range that the judge believed applicable, but that turns out on our review to have been mistakenly high.

2. If courts were routinely to treat more severe Guidelines amendments as a signal that the Sentencing Commission had previously not taken the circumstances described in those amendments adequately into account, thus automatically justifying departures upward on that basis (see Guideline § 5K2.0), that would effectively gut the Ex Post Facto Clause in this area of law. Instead courts should examine each Guidelines amendment individually before considering the type of harmless error analysis authorized by *Williams*.

In this instance the Sentencing Commission had certainly considered the need to provide special treatment for fraud on financial institutions in the pre-November 1, 1991 version of Guideline § 2F1.1(b)(6). And plainly the specific offense characteristics in Guideline § 2F1.1(b)(1) had always reflected the financial magnitude of the fraud (in this instance Kopshever's base offense level was increased by 11 levels because the amount involved was between $800,000 and $1.5 million). What the amendment's added paragraph reflected, then, was a somewhat modified Guidelines approach by the Commission to fraud on financial institutions—but not at all an absence of prior thought by the Commission on the subject, such as would automatically trigger the availability of an upward departure for that reason.

We therefore remand the ex post facto issue to the district court so that it can be decided on a fully developed factual record. We do not suggest that there are necessarily any relevant facts beyond those to which the parties have already stipulated. Instead the point is that given the way in which the issue was raised below (including its belated timing), we would not be dealing with a full deck if we sought to resolve the question finally on the record before us.

### 2. *Double Counting*

■ As we have already said, two of the two-level adjustments that the district court made on the date of sentencing were these:

address this issue to put it to rest." But this is not the appropriate occasion to do so, both (1) because the government has conceded the point for purposes of this case (not surprisingly, then, neither party has pursued the matter in this court after Kopshever's opening brief had raised the ex post facto issue and had cited the Su-

preme Court's decision in *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) and two of our own cases to the same effect) and (2) because the issue may be rendered moot if it turns out on remand that a significant part of Kopshever's fraudulent conduct carried past the November 1, 1991 date.

1. Guideline § 3A1.1, which applies "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise susceptible to criminal conduct"; and

2. Guideline § 5K2.3, which permits a departure upward "[i]f a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense."

We express no ultimate opinion on the applicability or inapplicability of the "unusually vulnerable victim" enhancement, because that question is for the district judge in the first instance and because the new judge on resentencing may or may not take the same view of the facts here as did the district judge below. Though we will spend a moment or two on that subject for guidance, the controlling principle of our current review is that any application of *both* of the stated factors involves impermissible double counting.

"Unusually vulnerable victim" analysis must take heed of our decisions in *United States v. Sutherland,* 955 F.2d 25, 26, 27 (7th Cir.1992) (which requires that the person committing the fraud must have "intended to take advantage of old persons"—that is, that he "considered their age in deciding upon them as victims or that their age was a factor in the crime in any way") and in *United States v. Newman,* 965 F.2d 206, 211–12 (7th Cir.1992) (which spoke at page 212 of whether the fraudulent actor must have realized during the course of his activity "that he was dealing with someone abnormally susceptible to intimidation and deceit"). On that score the district judge's identification of the claimed support for the two-level increase left a good deal to be desired, but as already indicated the resentencing judge can reconsider the appropriate analysis and determine the applicability vel non of the adjustment.

But the unquestioned flaw in the sentence imposed below was that the district court really drew from the same well in setting out the considerations for application of the "unusually vulnerable victim" factor and in justifying the departure upward for unusually serious psychological injury—and he did so without the type of factual hearing that is required to make determinations on contested issues. Even apart from the thinness of factual support for the grounds purportedly justifying the departure, the procedure followed below runs afoul of our recent explanation of the concept of "double counting" in *Lallemand,* 989 F.2d at 939–40. Indeed, the same conclusion was reached recently by the Second Circuit in a strikingly similar situation in *United States v. Mandel,* 991 F.2d 55, 58–59 (2d Cir.1993). Accordingly, on remand the district court will not be free to depart upward based on the factor of an unusually serious psychological injury—at least in the absence of a very different type of factual record from that before us.

### Conclusion

Although Kopshever makes other arguments, we have already said that they need not be addressed here because the judge assigned to the case on remand will have the opportunity to take a fresh look—one that will necessarily eliminate some objections and that may take appropriate account of any others. Accordingly we take the following actions in these appeals:

1. We DISMISS the appeal in Case No. 91–40056–JLF (our No. 92–2652) on condition that the resentencing on the other charges remain concurrent with that imposed in the counterfeiting case.

2. We VACATE the sentence in Case No. 92 CR 40021–JLF (our No. 92–2653) and REMAND for resentencing by a different district judge in a manner consistent with this opinion.

RIPPLE, Circuit Judge. I concur in the result.