52 F.3d 329
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael B. SIMON, Defendant-Appellant.
 No. 94-3796.
 United States Court of Appeals, Seventh Circuit.
 Argued April 12, 1995.
Decided April 24, 1995.
As Amended on Denial of Rehearing
May 19, 1995.*
 
 Before ALDISERT,* EASTERBROOK and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 This is an appeal of sentence by Michael Simon, an agent of an Illinois used car dealership, who pleaded guilty to defrauding two federally insured financial institutions by paying a dealership employee to apply for two nominee loans, to be secured by automobiles in the possession of the dealership. In each of these fraudulent loan transactions, Appellant knew that the loan proceeds would not be disbursed to the employee and would not be used to purchase the automobile as represented on the loan application, but instead would be deposited in the dealership's business accounts.
 
 
 2
 Jurisdiction was proper in the district court based on 18 U.S.C. Sec. 3231. This court has jurisdiction under 28 U.S.C. Sec. 1291. Appeal was timely filed under Rule 4(b) of the Federal Rules of Appellate Procedure.
 
 I.
 
 3
 Appellant was charged in a six-count indictment with
 
 
 4
 defrauding Beverly Bank Matteson and First Cook Bank for
 
 
 5
 Savings, by causing American Sports, Ltd. ("the dealership")
 
 
 6
 to obtain the proceeds of loans secured by automobiles in
 
 
 7
 possession of the dealership. Appellant perpetrated this
 
 
 8
 fraud by misrepresenting to the banks that the named
 
 
 9
 borrower on the loans had purchased the cars. In fact, the
 
 
 10
 borrower in each case never received the loan proceeds or
 
 
 11
 title to the vehicle. Rather, the dealership retained the
 
 
 12
 proceeds, did not deliver title and then sold the cars out
 
 
 13
 of trust, leaving the banks without collateral.
 
 
 14
 Appellant pleaded guilty to Counts IV and V, in which he
 
 
 15
 paid a dealership employee to apply for nominee loans on
 
 
 16
 July 31 and August 9, 1989. In both instances, he knew that
 
 
 17
 the proceeds of the loans would not be disbursed to the
 
 
 18
 employee and would not be used to purchase the automobiles,
 
 
 19
 but rather would be deposited directly into the dealership's
 
 
 20
 checking account. As a result of these fraudulent
 
 
 21
 transactions, First Cook Bank suffered a $5,200 loss.
 
 
 22
 The remaining four counts related to other loan
 
 
 23
 applications. Although the banks suffered no loss in Counts
 
 
 24
 II and VI, First Cook Bank lost approximately $42,254 in
 
 
 25
 Count I and Beverly Bank Matteson lost approximately $21,855
 
 
 26
 in Count III. Both counts involved automobile loan
 
 
 27
 applications by Simon in the names of third parties, the
 
 
 28
 president of the dealership in Count I on June 28, 1989 and
 
 
 29
 a customer in Count III on July 31, 1989. In both cases,
 
 
 30
 neither the applicant nor the banks received title to the automobiles.
 
 
 31
 In calculating the total loss involved in the offenses, the
 
 
 32
 probation officer added to the $5,200 from Count V the
 
 
 33
 $42,254 from the dismissed Count I and the $21,855 from the
 
 
 34
 dismissed Count III. The total loss figure reached by the
 
 
 35
 probation officer was $69,898.81. Appellant objected to the
 
 
 36
 calculations, arguing the loans in Counts I and III did not
 
 
 37
 constitute "relevant conduct" within the meaning of U.S.S.G.
 
 
 38
 Sec. 1B1.3, and should not be included in the calculation of
 
 
 39
 loss. In addition, he argued that, notwithstanding
 
 
 40
 inclusion of those counts, the amount of loss was both
 
 
 41
 inaccurate and the result of the banks' practices rather
 
 
 42
 than the dealership's actions. In an objection to the
 
 
 43
 Presentence Report filed on September 7, 1994, he further
 
 
 44
 argued that the court should apply the pre-November 1989
 
 
 45
 Sentencing Guidelines.
 
 
 46
 The district court rejected Appellant's argument that the
 
 
 47
 loans in the dismissed counts were not "relevant conduct" to
 
 
 48
 be included in the calculation of loss. It concluded with
 
 
 49
 respect to these two loans that, although it was possible
 
 
 50
 that Appellant did not intend to defraud the two banks from
 
 
 51
 the outset, he "formed in his mind the intent to not have
 
 
 52
 those loans paid back, and so, consequently, by a
 
 
 53
 preponderance of the evidence they should appropriately be
 
 
 54
 considered relevant conduct." The court further concluded
 
 
 55
 that "it is clear that the dollar amount was greater than
 
 
 56
 $40,000 of the losses to the banks," although it noted that
 
 
 57
 the government's calculation of $69,898.91 "perhaps might
 
 
 58
 have been inappropriate." Based on these findings, and
 
 
 59
 using the 1993 Sentencing Guidelines, the district court
 
 
 60
 determined the final adjusted Guidelines offense level to be
 
 
 61
 11, yielding a sentencing range of 8-14 months. On November
 
 
 62
 15, 1994, the district court sentenced Mr. Simon to eight
 
 
 63
 months imprisonment. Simon appeals.
 
 
 64
 A district court's determination that a defendant's
 
 
 65
 conduct constitutes "relevant conduct" under U.S.S.G. Sec.
 
 
 66
 1B1.3(a)(2) is a finding of fact, which will not be
 
 
 67
 disturbed on appeal unless it is clearly erroneous. United
 
 
 68
 States v. Sykes, 7 F.3d 1331, 1335 (7th Cir.1993); United States v. Wilson, 31 F.3d 510, 516 (7th Cir.1994). A
 
 
 69
 district court's determination of the amount of loss caused
 
 
 70
 by a defendant's fraudulent conduct also is a finding of
 
 
 71
 fact which is reviewable only for clear error. United
 
 
 72
 States v. Haddon, 927 F.2d 942, 952 (7th Cir.1991). Where a defendant fails to bring an argument to the district court's attention, we review for plain error. United States v. Seacott, 15 F.3d 1380, 1383 (7th Cir.1994).
 
 II.
 
 73
 "Relevant conduct" under the Guidelines includes "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. Sec. 1B1.3(a)(2). Application Note Nine states that "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi."
 
 
 74
 In this case, the conduct in the dismissed counts was "substantially connected" to the conduct to which Appellant pleaded guilty "by at least one common factor," to-wit, common victims. First Cook Bank and Beverly Bank Matteson were the victims in all six loan transactions. They made loan disbursements to applicants who never received the proceeds or title to the vehicles. The banks were left with unsecured loans, their only collateral ultimately being sold by Appellant out of trust. Moreover, the six counts shared a common goal: Obtaining proceeds from bank loans without using those monies for their asserted purpose and without an intention to repay them. The six counts also shared a common modus operandi: Appellant and the dealership received loan proceeds but retained or regained possession of the collateral, either through a nominee loan, a loan to a dealership employee who never took possession, or a loan that should have been canceled immediately or repaid after the borrower refused to take possession and nullified the transaction. The collateral was then sold out of trust to a third party and the dealership retained the proceeds without remitting them immediately to the bank or the named borrower. In every case, Simon resold bank collateral without notifying the secured party (the bank) or the named borrower. All conduct at issue took place in the same five month period, much of it overlapping.
 
 
 75
 We conclude the district court did not clearly err in considering Appellant's activities in the dismissed counts "relevant conduct" for the purposes of calculating loss.
 
 III.
 
 76
 Even if the court correctly determined that this other conduct was relevant, Appellant argues that an accurate calculation of loss is impossible given the banks' practices, which he suggests thwarted his efforts to repay these loans. Appellant alleges that the banks misapplied dealership funds by helping themselves to general account monies in order to reimburse themselves for more pressing dealership obligations. Thus, when Appellant attempted to repay these loans, his checks allegedly were not honored by the banks due to lack of sufficient funds. The district court considered this argument and rejected it because Mr. Simon was unable to provide the court with any detailed information about these alleged "attempts" to repay the banks. The district court's rejection of Appellant's argument was not clearly erroneous.
 
 IV.
 
 77
 We now come to the most difficult aspect of this appeal, the district court's decision to sentence Appellant using the 1993 Guidelines. All six transactions at issue occurred prior to November 1, 1989, the date Section 2F1.1(b)(1) was amended. "As a general rule, a district court must sentence a defendant based on the Guidelines in effect on the date of sentencing." Seacott, 15 F.3d at 1384 (citing 18 U.S.C. Sec. 3553(a)(4)). However, Appellant argues that the district court in this case was required to apply the 1987 Guidelines rather than the 1993 Guidelines because the 1987 pre-amendment version was more lenient to defendants in his situation. See id. at 1386 ("a guideline amendment which occurs after the commission of the defendant's crime which works to the defendant's detriment is inapplicable because it is a violation of the Ex Post Facto Clause."); United States v. Harris, 41 F.3d 1121, 1123 (7th Cir.1994).
 
 
 78
 The offense level in this case, excluding enhancements based on the amount of loss, was eight. Prior to November 1, 1989, Section 2F1.1(b)(1) provided that an offense involving a loss of $20,001-$50,000 triggered a four-level increase in the base offense level (resulting in a sentencing range of 6-12 months), while an offense involving a loss of $50,001-$100,000 triggered a five-level increase (resulting in a sentencing range of 8-14 months). The November 1989 amendment to the Guidelines reduced the amount of loss necessary to cause a four-level increase from $20,001-$50,000 to $20,001-$40,000, and reduced the amount of loss necessary to cause a five-level increase from $50,001-$100,000 to $40,001-$70,000. Thus, assuming the loss involved in this case was greater than $50,000, the sentencing range was the same under both versions of the Guidelines, to-wit, 8-14 months. Assuming the actual loss was $40,001-$50,000, the sentencing range would depend on which edition of the Guidelines the sentencing court used.
 
 
 79
 Because the district court, using the 1993 Guidelines, said nothing more than that it found loss to be "greater than $40,000," Appellant argues that it is possible that the actual loss was still less than $50,001, in which case under the pre-amendment Guidelines, he would not have received the five-level increase, but rather a four-level enhancement. The government responds that Appellant waived this argument by not raising it at any time between the initial sentencing hearing on October 6, 1994 and the subsequent sentencing on November 15, 1994: "If a motion is not acted upon, a litigant had better renew it. He may not lull the judge into thinking that it has been abandoned." United States v. Taglia, 922 F.2d 413, 416 (7th Cir.), cert. denied, 500 U.S. 927 (1991).
 
 
 80
 The record reflects the following: On May 27, 1994, a Presentence Investigation Report (PSR) was prepared. The PSR used the 1993 edition of the Sentencing Guidelines and calculated the loss involved to be $69,898.81. Based on the above, the probation officer recommended a five-level enhancement. PSR at 7. Appellant then objected to the calculation of loss, insisting total loss included only the $5,200 to which he pled guilty, and not loss encompassed by the dismissed counts. He further objected to the probation officer's use of the 1993 Guidelines, urging the court that if it "finds the calculations in error, the pre-November 1, 1989 table may inure to Mr. Simon's benefit and should be utilized." Defendant's Objections to PSR, p 6. On October 10, 1994, in an addendum to the PSR, the probation officer acknowledged: "If the court determines that the loss involved in the instant offense is other than $5,200 or $69,898.81, another edition of the guidelines may be more favorable to the defendant." Addendum to PSR, p 13.
 
 
 81
 At the sentencing hearing on October 6, 1994, the district court concluded that the amount of loss to the victim banks was "greater than $40,000." It added: "The government put a precise figure of $69,898.81 on the crimes as well as the relevant conduct. That perhaps might have been inappropriate." October 6, 1994 Sentencing Transcript at 49. Using the 1993 Guidelines, and faced with no objection by defense counsel, the court determined that the probation officer properly enhanced Mr. Simon's offense level by five and that the applicable sentencing range was 8-14 months. The sentencing hearing was at that point recessed until November 15, 1994. Defense counsel knew that the district court determined loss to be "greater than $40,000" and the applicable Guidelines range to be 8-14 months, but did not suggest to the court that loss might be less than $50,000 between October 6 and November 15. Had counsel raised this argument, the district court could have remedied any potential ambiguities prior to final sentencing.
 
 
 82
 We do not believe defense counsel's silence during this period was enough to constitute a waiver of Appellant's Ex Post Facto argument. See United States v. Kopshever, 6 F.3d 1218, 1222 (7th Cir.1993) (although Ex Post Facto problem not raised at sentencing, "the gravity of the constitutional concerns" warranted addressing the issue for the first time on appeal); Seacott, 15 F.3d at 1383-84. However, at sentencing on November 15, 1994, defense counsel failed to raise the Ex Post Facto argument. Government counsel stated to the court: "And so the range for a criminal history Category I is 8 to 14 months." November 15, 1994 Sentencing Hearing at 4. At least at this juncture, the defense counsel had an obligation to express the very objection to the trial court that appellant is now pressing so vigorously before us.
 
 
 83
 Thus, defense counsel had numerous opportunities to object to the sentencing range but elected to abandon the argument that a four-level enhancement was appropriate and accept the district court's determination of the applicable sentencing range of 8-14 months.
 
 
 84
 Whether defense counsel's failure to raise this argument at sentencing is characterized as an abandonment, a waiver or a forfeiture, and whether our review is plenary or for plain error, we will not disturb the eight month sentence imposed. First, defense counsel stood silent at the November- 1994 sentencing hearing in the face of statements by the court and the prosecution that the sentencing range was 8-14 months, in all likelihood because he believed that the district court's decision to use the post-amendment 1993 Sentencing Guidelines evidenced its belief that the applicable range would be the same under either edition and, therefore constituted an implicit finding that loss was greater than $50,000. Second, once the court decided to consider loss caused by the "relevant conduct" in the dismissed counts, there was no basis for concluding loss was less than $50,000. Although it is true that the court stated that the $69,898.81 estimation of loss "might have been inappropriate," once the court rejected Mr. Simon's "relevant conduct" and "attempt to repay" arguments, there was no reason to assume the court believed the PSR estimate was off the mark by $20,000 or more.
 
 V.
 
 85
 We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary.
 
 
 86
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Judge Cummings took no part in the decision disposing of the petition for rehearing
 
 
 *
 Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit is sitting by designation