

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2000

# United States v. Greene

Precedential or Non-Precedential:

Docket 99-1625

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Greene" (2000). *2000 Decisions.* Paper 66.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/66

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 27, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1625

UNITED STATES OF AMERICA

v.

REGINALD GREENE

      Reginald Greene,
        Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Criminal No. 98-cr-00376-1)

District Judge: Honorable Stewart Dalzell

ARGUED MARCH 10, 2000

BEFORE: BECKER, Chief Judge, NYGAARD, and
GARWOOD,* Circuit Judges.

(Filed: March 27, 2000)

      Richard D. Malmed, Esq.
       (ARGUED)
      Suite 1920
      15th & JFK Boulevard
      Two Penn Center Plaza
      Philadelphia, PA 19102
       Counsel for Appellant
_____

* Honorable Will L. Garwood, United States Circuit Judge for the Fifth
Circuit, sitting by designation.

        Amy L. Kurland, Esq. (ARGUED)
        Suite 1250
        Office of United States Attorney
        615 Chestnut Street
        Philadelphia, PA 19106
         Counsel for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

I. INTRODUCTION

In a non-precedential memorandum opinion filed on
March 27, 2000, we addressed several issues raised by
Reginald Greene, the appellant in this case. Greene was
charged with violating the Racketeer Influenced and
Corrupt Organizations Act ("RICO"), 18 U.S.C.S 1962(c)
(Count One); RICO Conspiracy, in violation of 18 U.S.C.
S 1962(d) (Count Two); bank fraud, in violation of 18 U.S.C.
S 1344 (Counts Three through Seventeen); money
laundering, in violation of 18 U.S.C. S 1957 (Counts
Eighteen through Thirty-One); and forfeiture. Greene
entered into an agreement with the government, whereby
he entered a plea of guilty to Counts One and Two. On
appeal, Greene raised several challenges to his sentence,
which we rejected.

In a motion filed on April 5, 2000, the government
requested that we publish our memorandum opinion to
clarify how U.S.S.G. S 2F1.1(b)(7)(B)1 should be interpreted.
We decline to publish the entire memorandum opinion, but
will address in this for-publication opinion the question of
whether Section 2F1.1(b)(7)(B)'s sentencing enhancement
for an offense affecting a financial institution, in which the
defendant derives more than $1 million in gross receipts
from the offense, requires that the defendant defraud any
single financial institution of that amount. Our

_____

1. This provision was previously incorporated as U.S.S.G.
S 2F1.1(b)(6)(B), but was changed to 2F1.1(b)(7)(B) effective Nov. 1,
1998.

                        2

memorandum opinion of March 27, 2000, will remain on
file, disposing of Greene's additional arguments on appeal.[2]

## II. FACTS AND PROCEDURES

Greene ran a large-scale criminal ring that passed stolen
and counterfeited checks in several states. This ring
involved more than 60 people, and operated over a period
of at least 8 years. Greene was responsible for defrauding
14 banks and other financial institutions out of more than
$6 million.

Greene and his lieutenants operated by gathering
identifying information from various corporations, and then
printing counterfeit checks on accounts belonging to those
corporations. Greene distributed these counterfeit checks
by sending them through his lieutenants to "squad
leaders," who in turn employed numerous people as
"passers." These passers opened accounts in false names at
various banks and deposited the counterfeit checks. The
passers then withdrew the funds from these accounts,
wiring or sending the proceeds back to Greene. Greene also
stole actual corporate checks, with the assistance of a bank
employee. His enterprise cashed these checks, again using
passers and fraudulent accounts to transfer the funds.

On August 12, 1998, Greene was indicted in the Eastern
District of Pennsylvania. Greene entered into an agreement
with the government, whereby he entered a plea of guilty to
violating RICO, 18 U.S.C. S 1962(c), and to RICO
Conspiracy, in violation of 18 U.S.C. S 1962(d).

Greene now argues that the District Court erred by
imposing a 4 point sentencing enhancement under U.S.S.G.
S 2F1.1(b)(7)(B). This provision applies when the offense
affected a financial institution, and the defendant received
more than $1 million in gross receipts from the offense.
Greene claims that he did not defraud any single  financial
institution of more than $1 million, even though

_____

2. To be absolutely clear, this for-publication opinion supercedes only
the discussion of the provision now codified at U.S.S.G. S 2F1.1(b)(7)(B)
in our memorandum opinion filed March 27, 2000. The memorandum
opinion disposes of the rest of the issues raised by Greene.

cumulatively he was responsible for losses to several financial institutions exceeding this amount. He therefore argues the District Court should not have applied this sentencing enhancement to him.

We disagree, and will affirm the District Court.

III. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject matter jurisdiction pursuant to 18 U.S.C. S 3231. We have jurisdiction over this appeal from a sentence pursuant to 28 U.S.C.S 1291 and 18 U.S.C. S 3742(a).

"When statutory construction or construction of the Sentencing Guidelines is required on appeal, the standard of review is plenary." United States v. Sabarese, 71 F.3d 94, 95 n.1 (3d Cir. 1996). We therefore exercise plenary review over the District Court's determination that U.S.S.G. S 2F1.1(b)(7)(B) does not require that a defendant derive more than $1 million from a single affected financial institution.

IV. DISCUSSION

Greene admits that he derived more than $1 million by defrauding several financial institutions, but asserts that he did not defraud any single institution of this amount. He argues it was therefore error to enhance his sentence under Section 2F1.1(b)(7)(B). We disagree. The District Court correctly held that U.S.S.G. S 2F1.1(b)(7)(B) does not require that a defendant derive more than $1 million from a single financial institution. This provision states that if the offense:

> (B) affected a financial institution and the defendant
> derived more than $1,000,000 in gross receipts from
> the offense,

then the offense level should be increased by four levels. U.S.S.G. S 2F1.1(b)(7)(B) (emphasis added)." `Gross receipts from the offense' includes all property, real or personal, tangible or intangible, which is obtained directly or indirectly as a result of such offense." U.S.S.G.S 2F1.1 cmt. (n.16).

4

As matter of first principles, we read Guidelines provisions for their plain meaning. See United States v. Wong, 3 F.3d 667, 670 (3d Cir. 1993). Such a plain reading does not support Greene's argument, which inserts a linkage between the affected financial institution and the source of the total gross receipts that does not exist in the plain text. The requirement that a financial institution be affected and the requirement that the defendant derive more than $1 million in gross receipts from the offense are separate and distinct prerequisites.

There is simply no case law that supports Greene's interpretation of this provision. "The plain language of the Guidelines indicates that the defendant must derive a million dollars from the offense, not from the financial institutions." United States v. Monus, 128 F.3d 376, 397 (6th Cir. 1997), cert. denied, 525 U.S. 823 (1998).3 Other Circuit Courts of Appeals have agreed. See United States v. Kohli, 110 F.3d 1475 (9th Cir. 1997) (holding same); United States v. Kopshever, 6 F.3d 1218, 1221 (7th Cir. 1993) (holding same). Cf. United States v. Bennett, 161 F.3d 171, 192 (3d Cir. 1998), cert. denied, 120 S. Ct. 61 (1999) (not directly addressing this issue, but noting that money derived from offense came from "several" institutions while upholding enhancement under Section 2F1.1(b)(7)(B)).

V. CONCLUSION

For the reasons stated herein, we affirm the enhancement to Greene's sentence resulting from the application of U.S.S.G. S 2F1.1(b)(7)(B). This provision does not require that a defendant derive more than $1 million from a single financial institution, so long as he or she derived more than $1 million in gross receipts from the offense.

_____

3. As it is clear that Greene derived in total more than one million dollars
from defrauding several financial institutions, even though not that much from any one financial institution, we need not and do not decide whether the `more than $1,000,000.00' threshold of Section 2F1.1(b)(7)(B) can be met where all amounts derived from any financial institutions total less than $1,000,000.00, but the total derived from all sources exceeds $1,000,000.00.

5

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

6